UNITED STATES of America, Appellee,

v.

Steve Lee WARD and Cheryl Lynn Rose, Appellants.

UNITED STATES of America, Appellee,

v.

Jimmie T. SANDERS, Appellant.

Nos. 2203, 2205.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 2, 1983.

Decided April 1, 1983.

na with intent to distribute, and conspiracy to commit the substantive offense. 21 U.S.C. §§ 841(a)(1) and 846. We affirm the judgments of the district court, 546 F.Supp. 300.[1]

FBI Agent Knox was contacted on December 9, 1981 by an undisclosed informant, who told Knox that he had seen defendant Ward approximately eight weeks earlier at a white barn with a tin roof located on property belonging to defendant Sanders. Ward was allegedly planting marijuana seeds in several hundred pots under three rows of suspended grow lights. The informant, who had never been an informant before, stated that he had had drug dealings with Ward in the past. He further asserted that he had been to the barn about four weeks earlier, that is, four weeks after he saw Ward planting the marijuana, and found the doors nailed shut or padlocked, and tar paper over the windows. The informant also told Agent Knox that on December 4, 1981, at about 2:30 a.m. he saw a small grey sports car, which he knew belonged to Ward, parked at the barn.

After conferring with Arkansas State Police Lieutenant Rife, who was present during the conversation, Agent Knox directed Investigators Beach and Combs to set up a surveillance of the barn. On December 10, 1981, at about 12:30 a.m., Beach and Combs saw an individual drive up to the barn in a small grey sports car and unlock the door. With the aid of a telescopic "night scope,"[2] the individual was identified as Ward, who was known to Beach and Combs as a dealer in narcotics. After Ward entered the barn, he apparently turned on some lights, and the investigators saw him adjust something on the wall.

The information obtained from the informant and from the surveillance was passed through several persons to an affiant, Henry Tuck, who recited in his affidavit that Beach and Combs saw Ward "adjusting three rows of growing lights and/or black lights." Based upon the affidavit, a search

Guy Jones, Jr., P.A., Conway, Ark., for appellant.

J. Michael Fitzhugh, Asst. U.S. Atty., W.D. of Ark., W. Asa Hutchinson, U.S. Atty., W.D. of Ark., Fort Smith, Ark., Sidney M. Glazer, Atty., Dept. of Justice, Washington, D.C., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

HENLEY, Senior Circuit Judge.

Defendants, Steve Lee Ward, Cheryl Lynn Rose, and Jimmie T. Sanders, appeal their convictions for possession of marijua-

---

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court, Western District of Arkansas.

2. The night scope operates by drawing upon all available light sources to illumine the magnified image.

warrant was issued and executed on the morning of December 12. Over three hundred marijuana plants in plastic cups under suspended fluorescent lights were found in an enclosed area inside the barn.

Ward was subsequently arrested at his residence, which he shared with defendant Rose, who owned a small grey sports car. At the time of his arrest, Ward told Rose to call "Loren" and tell him what was going on. Later investigation revealed fingerprints of all defendants on various plastic cups, some of which contained marijuana plants, seized in the barn.

Defendants moved the court to suppress the evidence seized pursuant to the warrant and to disclose the identity of the informant. After hearings,[3] the court denied defendants' motions. The case was then tried on the basis of stipulated facts and all defendants were found guilty on both counts.[4]

3. The court conducted an *in camera* hearing with Agent Knox and the informer on the disclosure motion.

4. The district court expressed the view in a supplemental opinion that where guilt is not contested and the only issue concerns a suppression motion, the defendants may stipulate to their guilt while reserving the right to appeal the denial of the motions to suppress. In the present case, defendants Ward and Sanders stipulated that they were guilty. Rose joined in the stipulations concerning the evidence of the informant's tip, the surveillance, and the subsequent search and arrests, but did not stipulate to her guilt, arguing that the evidence was insufficient. The district court, however, found Rose guilty primarily on the basis of her living arrangement with Ward, Ward's use of her car, and the presence of her fingerprints on several of the plastic cups found in the barn.

5. According to the district court, the affidavit contained the following statements:
On December 9, 1981, a resident of Searcy County, Arkansas, who admits dealing in drugs and who is fearful of his life and who has never been an informant, advised Special Agent Jack D. Knox, Federal Bureau of Investigation (FBI), that approximately eight weeks from the date of interview he saw Steve Ward, whom source described as a person with whom he has had past narcotics dealings, at a white barn with a tin roof located on property approximately three miles west on Zack Road from Highway 65 on the south side of the road in Searcy Coun-

Defendants first contend that the affidavit for the search warrant was insufficient to show probable cause. In conjunction with this argument, it is asserted that the statement in the affidavit that Beach and Combs saw Ward adjusting grow lights in the barn was intentionally false and must be disregarded. It is undisputed that the statement in question was false because it was physically impossible to see into the enclosed area within the barn where the grow lights were located from the position of the surveillance officers outside. However, because we conclude that this statement is not necessary to a determination of probable cause, we need not decide whether it was made intentionally. *Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). We will simply assess probable cause based on the remainder of the affidavit.[5]

ty. Ward was in the barn where there were 600 to 700 clay pots and a large quantity of marijuana seeds in a cellophane bag. Ward was observed planting the seeds in the dirt-filled pots, and suspended above them were growing lights and/or black lights in three rows. The windows of the barn had been covered with black tar paper.
Approximately four weeks previous to December 9, 1981, source advised SA Jack D. Knox, FBI, that he was again at the above-described property and saw the front door nailed closed, a padlock on the back door with windows secured.
Source also advised SA Jack D. Knox, FBI, that on December 4, 1981, at approximately 2:30 AM, he observed a small grey-colored sportscar with convertible top, which he knows to belong to Steve Ward, at the above-described barn. He observed this vehicle backed up to the back door of the above-described barn. At this time, the barn was still secured as described in the above paragraph.
On December 10, 1981, Sergeants Bill Beach and Rod Combs, Narcotics Investigators for the Arkansas State Police, at 12:30 AM, observed the white barn with tin roof located approximately three miles west from Highway 65 on the south side of Zack Road, property which Sgt. Combs knows to belong to Jimmy Terrell Sanders and which he used to raise hogs. Sergeants Beach and Combs observed from property adjacent to the above-described property, through the use of night scope and binolars [sic], a person they know to be Steve Ward adjusting three rows

■ To support a finding of probable cause, the well-known *Aguilar-Spinelli* test requires an affidavit based on an informant's tip to disclose "both the circumstances underlying the informant's knowledge, and the circumstances underlying the [affiant's] belief in the informant's reliability." *United States v. Wentz,* 686 F.2d 653, 656 (8th Cir.1982), *citing Spinelli v. United States,* 393 U.S. 410, 415–16, 89 S.Ct. 584, 588–89, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). Here we are concerned with the second, or reliability, prong of the test.[6] Although, as noted by the district court, a tip from an unfamiliar informant is generally insufficient to constitute probable cause, reliability may be demonstrated by independent corroboration. *See United States v. McGlynn,* 671 F.2d 1140, 1145 (8th Cir.1982). Moreover, it has been suggested that the reliability of a nonprofessional informant need not be held to the stringent standards applied to an unidentified professional informant; nor is it necessary that every element of the informant's tip be corroborated. *United States v. Dennis,* 625 F.2d 782, 791 (8th Cir.1980).

■ The affidavit reflects that the investigators observed Ward in the middle of the night entering a white barn with a tin roof and with tar paper over the windows, located on Sanders' property.[7] In view of the great deference accorded an issuing magistrate's determination of probable cause, *United States v. Leichtling,* 684 F.2d 553, 555 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983), we conclude that there was sufficient corroboration of the informant's tip by the surveillance officers, even in the absence of the incorrect statement concerning Ward's adjustment of grow lights, to demonstrate the reliability of the informant's tip, and that the affidavit showed probable cause for issuing the warrant.[8]

Defendants' next major contention is that the use of the night scope without a warrant was impermissible. It is undisputed that the only information obtained by using the night scope was the identity of Ward, who was identified as he stood outside before entering the barn. Once inside the barn, Ward turned on some lights, at which point use of the night scope became unnecessary.

■ The district court applied the test set forth in *United States v. Bruneau,* 594 F.2d 1190, 1196–97 (8th Cir.), *cert. denied,* 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979), that is, defendant must exhibit an actual expectation of privacy that is recognized by society as reasonable. The following factors were then considered: the type of visual aid used; the defendant's privacy-enhancing conduct; the nature of the area

---

of growing lights and/or black lights. They advised that the barn windows were covered with black tar paper and the windows were secured. Sergeants Beach and Combs further advised that Steve Ward is known to them as being a dealer in narcotics. Sergeants Beach and Combs advised it is their experience that persons involved in illegally growing marijuana plants will often use growing lights and/or black lights in a closed area so their activity cannot be observed by others.

On December 10, 1981, Major Quimby Johnson, Arkansas State Police, Little Rock, Arkansas, advised his records reveal that Steve Ward was arrested on January 23, 1978, at Clinton, Arkansas, for Burglary and Theft, no disposition shown. Ward was also arrested by the Sheriff's Office at Abilene, Kansas, for Larceny with no disposition shown. Major Johnson further advised they have received numerous reports of Steve Ward being in-

volved in the sale and distribution of narcotics.

**6.** The basis of knowledge prong is satisfied by the informant's assertion that he personally witnessed Ward in the barn planting marijuana seeds in several hundred containers, and that he later observed the precautionary measures taken to secure the barn.

**7.** We find no merit in defendants' argument that the description of the property in the affidavit was inadequate.

**8.** We find no merit in defendant's arguments that the affidavit was based on stale information. The nature of the plant and light set-up described by the informant plus the informant's observation of the grey sports car at the barn only a few days before Agent Knox was contacted suggest a continuing operation. *See United States v. Dennis,* 625 F.2d at 792.

under surveillance; the number of persons having legitimate access;[9] the social inhibitions associated with the location; the extent of defendant's control over the location; and the manner of observation. We agree with the district court's thorough analysis of this issue and conclude that Ward had no reasonable expectation of privacy with respect to his identity as he stood outside the barn, which was located over one hundred fifty feet from Sanders' residence. *Cf. United States v. Knotts*, —— U.S. ——, ——, 103 S.Ct. 1081, 1084–85, 75 L.Ed.2d 55 (1983) (no expectation of privacy extending to visual observation of car arriving on premises after leaving highway).

■ Defendants also argue that the court erroneously refused to require disclosure of the informant's identity and Agent Knox's notes concerning his communication with the informant. The district court conducted an *in camera* hearing on August 11 and 12, 1982 with Agent Knox and the informer. Applying the balancing test set forth in *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957), the court concluded that the informant's testimony at trial would duplicate Agent Knox's recitation of the information related to him by the informant, and would not be "remotely exculpatory" but would instead be "cumulatively incriminating."[10] *See United States v. Barnes*, 486 F.2d 776, 778 (8th Cir.1973). On the other hand, the court was convinced that the government's concern for the safety of the informant and his family was "real and immediate."

We have reviewed the transcript of the *in camera* hearing and conclude that the district court did not err in refusing to require disclosure of the informant's identity.

■ Finally, Rose challenges the sufficiency of the evidence supporting her convictions. The evidence against Rose contained in the stipulations may be summarized as follows: she was living with Ward; her automobile was used to some extent in the operation; her fingerprints were found on several cups seized in the barn;[11] and she was instructed by Ward at the time of his arrest to call "Loren."

In reviewing the record, we are bound to view the evidence in the light most favorable to the government and to accept as established all reasonable inferences supporting the conviction. *United States v. Brown*, 584 F.2d 252, 262 (8th Cir.1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979). Furthermore, once a conspiracy is established, a particular defendant's involvement may be shown by circumstantial evidence or by evidence that otherwise seems slight. *Id.* However, guilt may not be inferred solely on the basis of defendant's presence or association with members of the conspiracy. *Id.* at 263. The majority of this panel concludes that the evidence against Rose contained in the stipulations is not sufficient to show beyond a reasonable doubt that Rose was ever in possession of the marijuana, or that she knowingly participated in the conspiracy. The judgment against Rose is therefore reversed.[12]

For the foregoing reasons, the judgments of the district court are affirmed in part and reversed in part.

---

**9.** It appears that only Ward and Sanders had keys to the barn. The record does not reveal, however, any restrictions on the number of persons having legitimate access to the area outside the barn.

**10.** Agent Knox's notes were also deemed not beneficial to the defendants.

**11.** The exhibits attached to the stipulations indicate that these cups were found in the enclosed area within the barn but it is not clear that they contained marijuana plants.

**12.** Although sharing the majority's doubt concerning the sufficiency of evidence with respect to Rose's conviction for possession, the author of this opinion is satisfied that the stipulated facts are sufficient to support to the requisite degree of certainty inferences of Rose's knowledge of and participation in the conspiracy, and would therefore affirm at least that portion of her conviction. *See United States v. Burchinal*, 657 F.2d 985, 990–92 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981) (technically legal acts consistent with drug operation sufficient to support conviction for conspiracy).