**UNITED STATES of America, Appellee,**

v.

**Duane Wendall LARSON, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Sheila Jane BURGESS, Appellant.**

Nos. 84–5080, 84–5081.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1984.

Decided April 11, 1985.

Rehearing and Rehearing En Banc Denied May 31, 1985.

Michael Nash and Raymond J. Smith, Chicago, Ill., for appellant.

Richard E. Vosepka, Minneapolis, Minn., for appellee.

Before HEANEY, ROSS and FAGG, Circuit Judges.

ROSS, Circuit Judge.

A jury found Duane Wendall Larson and Sheila Jane Burgess guilty on a count of an indictment which charged them with possessing three pounds of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982), and aiding and abetting such action in violation of 18 U.S.C. § 2 (1982). The cocaine was discovered by police upon a warrantless search of a motel room in Burnsville, Minnesota.

On appeal, both defendants argue that the evidence obtained pursuant to the search should have been suppressed. The defendants also assert that the trial court violated their due process rights by refusing to grant a continuance and by failing to conduct a sufficient review of the magistrate's findings and recommendations on their motions to suppress. Finally, defendant Burgess argues that the evidence was insufficient to support her conviction, that the prosecutor failed to disclose certain evidence in violation of the dictates of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that her due process rights were violated in that she was not given sufficient time to prepare for trial.

We affirm defendant Larson's conviction, but reverse defendant Burgess' conviction based on the insufficiency of the evidence to support her conviction. Due to our reso-

lution of Burgess' sufficiency of the evidence issue, we shall not address the other issues as they relate to her.

## FACTS

On the afternoon of October 28, 1983, a woman rented room 124 of a Howard Johnson's motel for one night. The woman registered under defendant Burgess' name and address and advised the desk clerk that two people would be occupying the room. She paid for the room in advance, as required by motel policy.

On the morning of October 29, 1983, the woman checked out of the motel and took a taxi to the airport to pick up a car. She had received permission from William Webster, the assistant manager, for the other occupant of room 124 to stay in the room until 2:00 p.m. The normal checkout time is noon.

At about 2:30 p.m. a maid went to clean the room, but was told by defendant Larson that "he did not want service and was staying over." The maid then informed Webster of this occurrence.

Webster sent a bellman to the room at about 5:30 p.m., since he feared that the occupant of room 124 would leave without paying for several long distance phone calls which had been made from the room. The bellman reported that the room was unoccupied.

Webster then went to examine the room himself. When no one answered the door, he entered and discovered empty liquor bottles, prescription pills, keys, and grocery bags containing plastic bags with white powder in them. After getting the motel's assistant restaurant manager to help him examine the white powder more closely, he called the motel's general manager and the police.

At about 6:40 p.m. two Burnsville police officers arrived at the motel. Webster informed them that there were several bags containing a suspicious white powder in a vacated room.

At about 7:00 p.m. Webster knocked on the door to room 124. He was about to enter, using a passkey, when he heard an answer from within the room. Webster informed the occupant that the day's rent had not been paid. Larson replied from within that "he'd be down to take care of it in a few minutes." Webster replied "okay."

The police then knocked on the door and asked to talk to Larson. After a short delay, Larson came out of the room and closed the door behind him. When Larson refused to let the officers enter the room, the officers sought consent from the motel manager. Upon receiving the manager's consent, the police entered room 124 and discovered the cocaine.

## DISCUSSION

### A. Motel Search

Larson moved to suppress the cocaine seized in room 124 on the ground that the search violated his fourth amendment rights. The government contends, and the district court found, that Larson failed to meet his burden of proving that he had a legitimate expectation of privacy in room 124 at the time of the search. *See Rawlings v. Kentucky,* 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978).

The district court relied primarily on the decision in *United States v. Parizo,* 514 F.2d 52 (2d Cir.1975). In *Parizo,* the court held that the admission of a sawed-off shotgun seized by a police officer from the defendant's motel room was proper since the defendant, Chester Parizo, lacked a reasonable expectation of privacy in the motel room.

The facts in *Parizo* are similar to those in this case. First, like Larson, Parizo had stayed in his motel room beyond the occupancy period without paying for the next day's rent. Second, both Larson and Parizo had informed motel employees of their intent to stay in their motel rooms for an extended period. Finally, both Larson and Parizo had their rooms searched, and their contraband seized, by police officers after motel employees had discovered their contraband.

The court in *Parizo* applied the facts as follows:

The facts of the present case illustrate the close relationships of these conceptual bases: when the term of a guest's occupancy of a room expires, the guest loses his exclusive right to privacy in the room. The manager of a motel then has the right to enter the room and may consent to search of the room and the seizure of the items there found. *United States v. Croft*, 429 F.2d 884 (10 Cir. 1970) provides the clearest example of this point. The defendant had rented a motel room for two days. Shortly after the checkout time on the second day law enforcement officials, with the permission of the motel manager, searched the room and subsequently removed incriminating evidence. The court stated that the constitutional protection "is dependent on the right to private occupancy of the room. *When the rental period has elapsed, the guest has completely lost his right to use the room and any privacy associated with it."* Id. at 887. See, also, *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683 [698], 4 L.Ed.2d 668 (1960); *United States v. Cowan*, 396 F.2d 83 (2 Cir.1968).

*Id.* at 54 (emphasis added, footnote omitted). *See also United States v. Lee*, 700 F.2d 424, 425 (10th Cir.), *cert. denied*, 462 U.S. 1122, 103 S.Ct. 3094, 77 L.Ed.2d 1353 (1983); *United States v. Haddad*, 558 F.2d 968, 975 (9th Cir.1977).

■ We agree with the reasoning in *Parizo*. Here, Larson's exclusive right to privacy in room 124 elapsed prior to the police search. Larson stayed in the room seven hours beyond the checkout time and five hours beyond the time he had been given permission to stay without paying for the next day's rent in advance as required by motel policy. In addition, Larson had never checked into the room. Burgess had checked in but had also checked out several hours before the search. The dis-

trict court's finding that Larson's communications with motel personnel were not sufficient to support a reasonable expectation of a right of privacy in the room under these circumstances is supported by the facts. Accordingly, we affirm the district court's finding that Larson lacked a legitimate expectation of privacy in room 124 at the time of the search.

■ In addition, even if Larson had established a legitimate expectation of privacy in the room, the warrantless search was justified under the exigent circumstances exception.[1] First, the officers had probable cause, under the totality of the circumstances, to believe that contraband was located in room 124. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). Both the assistant manager and the assistant restaurant manager had closely examined the white powder in the plastic bags. In fact, they had even rubbed it between their fingers in an effort to determine what it was. Both concluded that the powder was an illegal substance. The police officers were fully informed of this conclusion, as well as other circumstances surrounding room 124, by the assistant manager upon their arrival at the motel.

■ Second, exigent circumstances existed making it necessary to search the room before a warrant could be obtained. Room 124 was on the ground floor and had two entrances. At the time the officers entered the room, they had no knowledge as to whether there were other occupants of room 124, as it had previously been thought that the room was vacant. Unless the officers acted quickly, there was a danger that the cocaine would be destroyed or removed from the room either by another occupant, or by Larson when the police were done questioning him. We have previously held that such an exigency removes the requirement that the police officers act

---

**1.** The magistrate found that exigent circumstances justified the warrantless search. The district court, however, made no findings on the issue. Instead, the court denied Larson's mo-

tion to suppress the cocaine solely on the basis that Larson lacked a legitimate privacy interest in room 124 at the time of the search.

with a warrant. *See, e.g., United States v. Knobeloch,* 746 F.2d 1366, 1367 (8th Cir. 1984), *cert. denied,* — U.S. —, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985); *United States v. Palumbo,* 735 F.2d 1095, 1097 (8th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984); *United States v. Kulcsar,* 586 F.2d 1283, 1286–88 (8th Cir. 1978). Accordingly, we find that the district court's denial of the motion to suppress the cocaine was proper.

## B. Continuance

Larson next alleges that his due process rights were violated by the trial court's failure to grant his motion for a continuance. On January 30, 1984, two days prior to trial, Larson's attorney filed a motion for a continuance. The sole reason given for the requested delay was that the attorney who was to present his case at trial, Oscar Goodman, was engaged in a trial in Nevada which would last approximately one week. Larson attached an affidavit explaining that each of his three sets of attorneys had been hired to perform specific tasks—one to conduct the trial, one to draft and litigate pretrial motions, and one to serve as local counsel.

The district court denied the motion on the basis that Larson had been given adequate time for trial preparation and adequate notice of the trial date.[2] The court also noted that the court had a full docket, that the court had not been informed of the division of functions amongst Larson's attorneys prior to Larson's motion for a continuance, and that Larson took a risk that his Nevada trial attorney would be engaged in a trial in that state.

On the morning of February 1, 1984, the court heard arguments on Larson's motion to withdraw appearances of all counsel other than Oscar Goodman and on a renewed motion for a continuance. The court again denied Larson's motion for a continuance.

The court stated that, in addition to the previous reasons given for denial of the motion, denial was appropriate since the case was not exceedingly complex. The court also emphasized the uncertainty of when Goodman would ever be available for trial. While Goodman had previously estimated that his trial would last one week, he was now estimating that the trial would last at least two weeks.

The court also denied Larson's motion to withdraw appearance of all counsel other than Oscar Goodman. Larson refused to permit his other attorneys (specifically, Raymond Smith, who handled the pretrial motions) to participate in the trial on the basis that he felt Oscar Goodman could do a better job and because he did not feel that the other attorneys were prepared for the trial. After fully advising Larson of the dangers of proceeding without counsel, the court permitted Larson to proceed without counsel, but asked that the other attorneys serve as standby counsel.

■ It is well established that trial courts are vested with broad discretion in matters of continuances. *See Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983); *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964); *United States v. Lingo,* 740 F.2d 667, 668 (8th Cir.1984). In *United States v. Bernhardt,* 642 F.2d 251 (8th Cir.1981), we listed the following five factors which trial courts must weigh when exercising this discretion:

1) the nature of the case and whether the parties have been allowed adequate time for trial preparation;

2) the diligence of the party requesting the continuance;

3) the conduct of the opposing party and whether a lack of cooperation has contributed to the need for a continuance;

---

**2.** Larson had been indicted on October 29, 1983, and arraigned on November 23, 1983. At the time of arraignment, trial was set for January 25, 1984. On January 19, 1984, the trial was rescheduled to January 30, 1984, so that objections to the magistrate's findings and recommendations, which were issued on January 19th, could be filed. Subsequently, the trial was postponed until February 1, 1984, to allow counsel to file responses to their respective objections to the magistrate's findings and recommendations.

4) the effect of the continuance and whether a delay will seriously disadvantage either party;

5) the asserted need for the continuance, with weight to be given sudden exigencies and unforeseen circumstances.

*Id.* at 252. The trial court here recognized the existence of these factors, as it cited *Bernhardt* when denying Larson's motion for a continuance.

■ Each of the factors as applied to Larson's case indicates that Larson's motion for a continuance was properly denied. First, the case was not complex, and adequate time for trial preparation and adequate notice of the scheduled trial date had been given. Second, the defense team exhibited a lack of diligence in that the court was not informed of Goodman's status as trial attorney, or of his scheduling conflict, until two days before trial. Third, the government did not contribute in any way to the need for a continuance. Fourth, denial of the continuance did not seriously disadvantage Larson, as he had attorneys available to him who were thoroughly familiar with his defense and competent to handle the trial. Finally, Goodman's scheduling conflict was not altogether unforeseeable. If the court had been put on notice of the problem earlier, it might have been able to accommodate Goodman's schedule. In sum, we find that the trial court did not abuse its discretion, as it had more than ample justification for denying Larson's motion for a continuance.

## C. Review of Magistrate's Recommendations

■ Larson's final claim is that the trial judge failed to make a *de novo* review of the record of the hearing before the magistrate on the motion to suppress, or of the particular findings and recommendations of the magistrate which he objected to. This claim is primarily founded on the fact that the trial judge's order denying Larson's motion to suppress the cocaine was issued on January 31, 1984—only one day after Larson filed his objections to the magis-

trate's findings and recommendations and only eleven days after the magistrate's findings and recommendations were filed.

The Federal Magistrates Act provides that: "A judge of the court shall make a de novo determination of those portions of the [magistrate's] report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (1982). In addition, the Fifth Circuit has held that constitutional concerns require that "an appellate court * * * be satisfied that a district judge has exercised his non-delegable authority by considering the actual testimony, and not merely be reviewing the magistrate's report and recommendations." *United States v. Elsoffer,* 644 F.2d 357, 359 (5th Cir.1981). *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir.1983). *See generally United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

We are satisfied that the trial judge here exercised her authority properly, as her order denying Larson's motion to suppress the cocaine expressly states that she made a *de novo* review of the record and that she conducted a thorough review of all objections and responses to the magistrate's findings and recommendations.

## D. Sufficiency of the Evidence (Burgess)

Burgess argues that the evidence was insufficient to support her conviction for possession of cocaine with intent to distribute and for aiding and abetting Larson in such action. To establish Burgess' guilt on the possession with intent to distribute charge, the government was required, of course, to establish Burgess' possession of the cocaine. This court has determined that the requisite possession may be either actual or constructive, and has defined constructive possession as "knowledge of presence plus control." *United States v. Caspers,* 736 F.2d 1246, 1249 (8th Cir.1984).

■ To establish Burgess' guilt on the aiding and abetting charge, the government was required to establish that Bur-

gess associated herself with the unlawful venture, that she participated in it as something she wished to bring about, and that she sought by her action to make it succeed. *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949); *United States v. Anziano,* 606 F.2d 242, 244–45 (8th Cir.1979). Since Burgess must have engaged in " 'some affirmative participation * * * which at least encourages the perpetrator,' " her "mere presence * * * at the scene of the crime or * * * [her] mere association with persons engaged in illegal activity is not sufficient" to establish that she was guilty of aiding and abetting. *United States v. Anziano, supra,* at 245 (*quoting United States v. Knife,* 592 F.2d 472, 476 (8th Cir.1979)). *See United States v. Kelton,* 446 F.2d 669, 671 (8th Cir.1971).

When reviewing the sufficiency of the evidence to uphold a guilty verdict, we apply the following principles:

> First, the court must view the evidence in the light most favorable to the verdict rendered. Second, the court must accept all reasonable inferences which tend to support the jury verdict. Third, the evidence need not "exclude every reasonable hypothesis except that of guilt but simply that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty."

*United States v. Wells,* 721 F.2d 1160, 1161 (8th Cir.1983) (*quoting United States v. Taylor,* 599 F.2d 832, 838 (8th Cir.1979)) (citations omitted). Applying these principles, we find that the evidence does not sufficiently establish Burgess' guilt.

■ The evidence against Burgess consists almost exclusively of the fact that she had checked into and stayed with Larson in the motel room from which the cocaine was later seized. But, as Burgess emphasizes, she had checked out of the motel room over seven hours before the evidence establishes that the cocaine was in the motel room.[3]

In addition to Burgess' presence at the motel room, the government attempts to use certain other circumstantial evidence to infer Burgess' guilt. First, the government points out that Burgess had familial and financial relationships with Larson, in that Larson was married to Burgess' sister and Larson had a financial interest in Burgess' two cars. According to the government, the inference to be drawn from this evidence is that Larson and Burgess are in the drug business together.

Second, the government emphasizes that Burgess had picked up a car at the airport after checking out of the motel. According to the government, the inference to be drawn is that Burgess picked up the cocaine at the airport and then took it to Larson.

The government's evidence is so scant that the jury could only speculate as to Burgess' guilt. The evidence is such that a reasonably minded jury *must* have a reasonable doubt as to Burgess' knowledge of the existence of the cocaine or of her intent to aid and abet Larson's drug scheme. *See United States v. Frol,* 518 F.2d 1134, 1137 (8th Cir.1975); *United States v. Stephenson,* 474 F.2d 1353, 1355 (5th Cir.1973). Accordingly, the facts of this case require that we vacate the judgment of conviction as to Burgess.

In sum, the judgment of the district court is affirmed as to Larson and reversed as to Burgess.

---

**3.** Burgess checked out at about 10:30 a.m. The assistant manager first discovered the cocaine at about 6:00 p.m. There is no evidence as to the actual time at which the cocaine made its way into the motel room.