815 F.2d 80
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Louis M. THORNTON, Plaintiff-Appellant,
v.
Otis BOWEN, Secretary of the Department of Health and Human
Services, Defendant-Appellee.
 No. 86-5538
 United States Court of Appeals, Sixth Circuit.
 Feb. 26, 1987.
 
 Before LIVELY, Chief Judge; WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Louis m. Thornton appeals from the judgment of the district court affirming the Secretary's determination that Thornton is not entitled to disability benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 Thornton filed his first application for disability insurance benefits on April 6, 1983, claiming inability to work as of January 5, 1983, due to arrhythmia. This application was denied by administrative action on May 16, 1983. No appeal was taken from this denial. Therefore, it became the final and binding determination of the Secretary on the issue of disability on or before May 16, 1983.[1]
 
 
 3
 Thornton filed a second application, which is the basis of this appeal, on January 23, 1984, claiming disability as of January 6, 1983, due to a heart condition. This application was denied initially and upon reconsideration. Thornton then requested and was given an administrative hearing which was held on October 2, 1984. He was represented by counsel.
 
 
 4
 Thornton testified at the hearing as to his personal history, his work history and his ailments. Thornton was born on March 5, 1939, and was 45 years old at the time of his hearing. He has a twelfth grade education. He last worked for a tire and rubber company as a tire builder and molder for approximately 20 years.
 
 
 5
 Thornton testified that he has the ability to read and write without difficulty. He is able to drive short distances and has his wife or a friend drive him long distances. He further testified that he is able to stand for approximately 35 to 40 minute periods. He tries to walk from one-half a mile to one mile each day. He does no housework, but cooks a little. He received on the job training to learn his molding job and has never received training for any other type of work. He stated that he takes procardia for his arteries, nitrostat for his chest pains and hydrochlorothiazide for his blood pressure. After taking the nitrostat medication he experiences headaches for approximately 30 to 40 minutes. He further testified that he experiences bad days consisting of up to three episodes of dizziness and chest rain and good days when the episodes do not occur at all. He currently visits his physician every three months for a physical check-up.
 
 
 6
 The following pertinent medical evidence was introduced at the hearing. Dr. Jesse McGee, Thornton's sole treating physician, admitted Thornton to St. Joseph Hospital on January 5, 1983, for evaluation and treatment of his complaints of chest pain and shortness of breath. Physical examination revealed a blood pressure of 140/80 and a pulse rate of 76. The first and second heart sounds were intact and there were no gallops or murmurs. Thornton underwent an EKG which revealed a sinus rhythm with nonspecific ST and T changes across the precordium. Serial enzymes revealed no evidence of myocardial infarction. Subsequent EKG's revealed no significant change during this hospital stay. Serum electrolytes were basically within normal limits. Dr. McGee diagnosed coronary artery disease with angina pectoris and discharged Thornton to Methodist Hospital on January 11, 1983, for cardiac catheterization and coronary arteriograms.
 
 
 7
 The cardiac catheterization report from Methodist Hospital, dated January 12, 1983, showed a diagnosis of normal left ventricular function and a normal coronary arteriogram. The left ventricle was normal in size with normal myocardial contractility; ejection fraction was estimated to be 70 percent. Thornton was subsequently discharged from Methodist Hospital on January 14, 1983. Thornton was given an exercise tolerance test on March 21, 1983. The results of this test were also normal.
 
 
 8
 Thornton was admitted to Methodist Hospital a second time on September 25, 1983, complaining of chest pain. This was Thornton's only hospitalization since his first application for disability benefits was denied on Mav 17, 1983. Thornton underwent a second cardiac catheterization during this hospital stay. He was found to have a 50 percent lesion involving the marginal branch of the circumflex; otherwise, the vessels were normal. Left ventricular diastolic pressure, as well as blood pressure, was also normal. Dr. McGee determined that Thornton could be treated medically and nitrate therapy was maintained. Thornton was discharged on September 27, 1983, with a diagnosis of mild coronary artery disease involving the left circumflex system. Dr. McGee also noted that although Thornton had a prior history of premature contractions and atrial fibrillation he felt that these oroblems had resolved.
 
 
 9
 The record also contains the transcript of a deposition taken by Dr. McGee on september 24, 1984. During this deposition, Dr. McGee opined that Thornton was permanently disabled and unable to pursue any gainful occupation due to his history of atrial fibrillation, chest pains and dizziness. An electrocardiogram taken on December 16, 1982, and interpreted by Dr. McGee as showing atrial fibrillation, was attached to this deposition.
 
 
 10
 A residual functional capacity assessment test taken on April 14, 1984, indicated that Thornton had the capacity to stand and walk a total of six hours during an eight hour day, sit about six hours over an eight hour day and frequently lift and carry 25 pounds. A vocational specialist also concluded that while Thornton could not do vocationally relevant past work, he could do other moderate work in the unskilled category.
 
 
 11
 The ALJ issued his opinion on February 26, 1985. . The ALJ found that Thornton had severe hypertensive cardiovascular disease; however, he went on to find that Thornton did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, subpt. P. Pie also found that Thornton's complaints of pain were credible only to preclude work above the sedentary level. After considering Thornton's residual functional capacity, age, education and work experience, the ALJ applied the medical-vocationaL guidelines and concluded that Thornton was not disabled pursuant to 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 1, Rule 201.21.
 
 
 12
 Thornton timely filed the instant action with the district court pursuant to 42 U.S.C. Sec. 405(g). This appeal was referred to a magistrate. The magistrate filed his report and recommendation on November 29, 1985, recommending that the decision of the Secretary denying benefits be approved and the complaint be dismissed. The district court agreed and adopted this report on March 5, 1996, thereby affirming the Secretary's decision to deny benefits. This appeal followed.
 
 II.
 
 13
 Pursuant to 42 U.S.C. Sec. 405 (g ), the Secretary's findings are conclusive if supported by substantial evidence. For there to be substantial evidence there must be more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). This court cannot base its decision entirely upon a single piece of evidence; the record must be evaluated as a whole. Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).
 
 
 14
 This deferential standard of review applies only to resolving issues of fact and credibility. Wiggins v. Schweiker, 679 F.2d 1387 (11th Cir. 1982); Beavers v. Secretarv, 577 F.2d 383, 387 (6th Cir. 1978) . Even if the reviewing court would resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 703 F.2d 1058 (6th Cir. 1983) .
 
 
 15
 Thornton argues that the Secretary erred in determining that Thornton's impairments, or a combination thereof, did not meet or equal a listing in 20 C.F.R. pt. 404, subpt. P, app. 1, for a cardiac impairment. In support of this argument, he contends that the ALJ failed to consider the combined effect of his multiple impairments and his main. He further contends the ALJ's finding that he could perform sedentary work is erroneous. Thornton's final contention is that the case should be remanded for the taking of additional medical evidence. Although Thornton has set forth three separate issues, each essentially requires review solely on the question of the substantiality of the evidence. Therefore, while we address each of Thornton's arguments, we will do so within the context of our substantial evidence inquiry.
 
 
 16
 Eligibility for social security disability benefit payments is determined pursuant to a five-step sequential evaluation process. Kirk v. Secretary of Health & Human Services, 667 F.2d 324, 528 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). If a claimant is found to have a severe impairment, as in the instant case, the third step requires the impairment to be compared against those listed in 20 C.F.R. pt. 404, subpt. P, app. 1, to see if, on the medical evidence alone, this claimant can be found to be disabled. Id. Furthermore, if a claimant has more than one impairment, the Secretary must review the symptoms, signs, and laboratory findings concerning the impairments to determine whether the combination of impairments is medically equal to anv listed impairment. 20 C.F.R. Sec. 404.1526(a). Medical equivalence must be based on medical evidence alone. This evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. Sec. 404.1526(b).
 
 
 17
 Thornton specifically argues that his impairments . meet or equal Listed Impairment Sec. 4.05, which states:
 
 
 18
 Recurrent arrhythmias (not due to digitalis toxicity) resulting in uncontrolled repeated episodes of cardiac syncope and documented by resting or ambulatory (Holter) electrocardiography.
 
 
 19
 20 C.F.R. pt. 404, subpt. P, app. 1, Sec. 4.05. In support of this argument, Thornton relies on the September 24, 1984 deposition of his treating physician, Dr. McGee. At that time, Dr. McGee stated that Thornton's rhythm disturbance was of a recurrent nature and could result in syncopal episodes. However, as noted by the ALJ, Dr. McGee had previously stated on October 3, 1983, that Thornton's problems with premature contractions and atrial fibrillation "had been resolved." The ALJ further noted that although Dr. McGee had interpreted Thornton's December 16, 1982, electrocardiogram as showing atrial fibrillation, none of Thornton's subsequent electrocardiograms indicated atrial fibrillation. On the contrary, they all showed sinus rhythm. Therefore, the ALJ concluded that although Dr. McGee stated in the deposition that Thornton was disabled due to atrial fibrillation, this opinion was not supported by appropriate clinical findings and was inconsistent with other findings concerning the severity and restrictions imposed by the . impairments.
 
 
 20
 As a general rule, the medical opinions and diagnoses of treating physicians are accorded substantial deference, and, if uncontradicted, complete deference. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). However, this is true only if the treating physician's opinion is based upon sufficient medical data. Harris v. Heckler, 756 F.2d 431, 435 (1985). Ultimately, the determination of disability is the prerogative of the Secretary, not the treating physician. Id. In the instant case, Dr. McGee himself initially opined that Thornton's problems had resolved; Dr. McGee only later opined, without any corroborating medical data, that Thornton was totally disabled. In light of this unsubstantiated change in position, we believe that there was substantial evidence to support the ALJ's conclusion that Thornton did not meet the criteria of Sec. 4.05.
 
 
 21
 In the alternative, Thornton argues that the combination of his impairments equal Sec. 4.05. He contends that the ALJ failed to consider the additional element of pain. However,we believe that this argument lacks merit. Chest pain of cardiac origin is an element of all of the listings under the cardiovascular system section, Sec. 4.00 of appendix 1. It is not an "additional" impairment to.be considered for the purpose of determining whether a combination of a claimant's impairments equal a listed impairment in appendix 1. Furthermore, the ALJ did consider Thornton's claim of pain, albeit at a later stage in his determination, when he concluded that Thornton's complaints of gain and limitations were only credible to preclude work above a sedentary level.
 
 
 22
 Thornton next argues that the ALJ's determination that Thornton could perform sedentary work is erroneous. Sedentary work is defined in the regulations as follow:
 
 
 23
 Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 24
 20 C.F.R. Sec. 404.1567 (a). I suppoort of this contention, Thornton argues that the case should be remanded for appropriate findings concerning the records of the treating physician, non-exertional impairments, and complaints of pain. However, we believe a remand for these purposes is unnecessary since there is substantial evidence in the record to support the ALJ's determination that Thornton can perform sedentary work. Thornton testified that he walks up to a mile each day, drives short distances, and does a little cooking. He also testified that he is able to stand for 35 to 40 minute periods and that he experiences days with no episodes of chest pain or dizziness. Additionally, Thornton's April, 1984 residual functional capacity assessment test indicated that he had the capacity to stand and walk a total of six hours during an eight hour day and lift and carry up to 25 pounds. Furthermore, the vocational expert concluded that Thornton could perform moderate work in the unskilled category. This evidence is clearly substantial evidence to support a conclusion that Thornton is capable of performing at least sedentary work.
 
 
 25
 Thornton lastly argues that the case should be remanded for the taking of additional medical evidence. He essentially contends that, pursuant to 20 C. F. R. Sec. 404 .1517 (b) (3) , a consultant examination is required. However, this argument also lacks merit. Section 404.1517 does not, as Thornton contends, mandate a consultative exam in this or any disability determination. This section merely sets forth circumstances in which the Secretary may ask a claimant to undergo a consultative examination at the Secretary's expense. (emphasis added).
 
 
 26
 In sum, as discussed above, we believe that there is substantial evidence to support the determination that Thornton is capable of performing sedentary work. After taking this factor into consideration, in addition to Thornton's age, education and work experience and applying the medical-vocational guidelines, the conclusion must be that Thornton is not disabled pursuant to 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 1, Rule 201.21. Therefore, the ALJ's finding of not disabled must be upheld. .
 
 
 27
 Having concluded that substantial evidence supports the Secretary's decision to deny disability benefits to Thornton, we accordingly AFFIRM the judgment of the district court.
 
 
 
 [1]
 Although Thornton subsequently filed a second application claiming disability prior to this date, he did not, in the instant appeal, contend that this determination was not final and binding. Therefore, the secretary's determination to dismiss Thornton's alleged onset of disability prior to May 17, 1983, is not an issue before this court