UNITED STATES of America, Appellee,

v.

**David Scott HOLM, Appellant.**

**No. 86–5374.**

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1987.

Decided Jan. 7, 1988.

John Sheehy, Minneapolis, Minn., for appellant.

James E. Lackner, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before McMILLIAN, Circuit Judge, FAIRCHILD,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The single issue presented in this appeal is whether the government established that David Scott Holm had constructive possession of cocaine and marijuana found in a house occupied by Timothy Eisenreich. Holm was convicted of distributing cocaine (Count I) and of possession of cocaine and marijuana with intent to distribute (Count III), both in violation of 21 U.S.C. § 841(a)(1) (1982). On this appeal he attacks only the sufficiency of the evidence as to the latter conviction. We are satisfied that there was sufficient evidence in the record to establish Holm's constructive possession of the drugs found in the Eisenreich house, and accordingly affirm the judgment entered by the district court on Count III.[1]

Beginning in April, 1985 an undercover deputy sheriff, Thomas Rainville, made several purchases of marijuana and cocaine from Gregory Johnson. On May 17, 1985 Johnson offered to sell Rainville an ounce of cocaine, and Rainville went to Johnson's apartment to negotiate the deal. Johnson described his source as someone he went to high school with and knew well, who now lived in Florida and traveled back and forth between Florida and Minnesota. The government offered evidence that David Holm lived in a Florida apartment, and that he made frequent trips between Miami and Minneapolis. While in Johnson's apartment, Rainville heard Johnson receive a call from an acquaintance named Dave. When Johnson hung up he indicated that Dave was his source and that the deal was set. He said that Dave was staying at the house of a friend named Tim and they could get the cocaine there. A pen register on Johnson's phone revealed that Johnson had called the Richfield, Minnesota residence of Tim Eisenreich some three times between the time that he first offered Rainville the sale and Rainville's arrival at his apartment. Johnson testified that Eisenreich was at work on the afternoon of May 17, 1985 and could not carry out the deal, but that Holm said he would sell Johnson the cocaine. Johnson then drove to the house of Tim Eisenreich, followed by Rainville and under surveillance by other deputy sheriffs. At Johnson's request, Rainville stopped some distance from the house, but the surveillance officers drove on and saw a new Ford pick-up truck registered to David Holm parked in Eisenreich's driveway. Johnson testified that Holm sold him the cocaine in the basement of the Eisenreich house. Holm and Johnson were the only persons known to be in the house at that time. Johnson then left the Eisenreich house and returned to his apartment, where he sold the cocaine to Rainville. On the basis of these events, Holm was convicted of distributing cocaine in violation of 21 U.S.C. § 841(a)(1).

After completing the May 17 transaction, Rainville expressed interest in purchasing larger quantities of cocaine. Johnson told him that his source, Dave, was returning to Florida and would have more cocaine in the next week. The evidence showed that David Holm left Minneapolis for Florida sometime after the May 17 transaction, but that he did not return until June 5, when he again stayed at the Eisenreich house. In

---

* The HONORABLE THOMAS E. FAIRCHILD, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

the intervening period, Johnson had no drugs to sell to Rainville. On June 6, however, Johnson offered to sell Rainville two ounces of cocaine. He went to Eisenreich's house to obtain the drug, where Eisenreich made the sale. On this occasion Holm was not present. Johnson was arrested when he returned to Rainville and sold him the cocaine. Officers then secured the Eisenreich residence while Rainville obtained a warrant to authorize its search. A drug party was in progress. Drugs and paraphernalia were in plain view, including mirrors with cocaine on them, mannitol (a substance commonly used to dilute narcotics), a drug filter, and a scale, all of which were found on or near a bar in the basement. Two locked tool chests were also found in the basement. After the search warrant was obtained the locks on the chests were forced open. Four ounces of cocaine were found in one, and approximately five pounds of marijuana in the other. No keys to the lock were found in the house or on Tim Eisenreich's person. A spare bedroom was filled with clothes too large for Eisenreich, which Holm identified as his at the trial. A large briefcase was found in the bedroom which contained Holm's passport and a number of other items identifying Holm as the owner. Several notes were found in the room and in Holm's briefcase, including one on paper identical to that of a note found in the Eisenreich basement. These notes, referred to as "drug notes" by the prosecution, contained lists of initials correlated to quantity numbers. While waiting for Rainville to return with a search warrant, two officers stationed at the house saw Holm pull his truck into the driveway. When he noticed the officers, Holm immediately backed out and drove away at a high rate of speed.

In addition to the evidence described above, Holm testified that his income was derived from occasional construction and boat maintenance jobs, as well as money gifts from his grandmother and girlfriend. He did not have a regular full-time job.

Yet his expenses were substantial. They included extensive travel, outright ownership of a new $15,000 Ford pick-up truck, mortgage payments on a Minneapolis townhome, rent for the Florida apartment, and flying lessons. He made six round trips to the Bahamas in an eleven month period, including two trips within one week. The government offered evidence that the Bahamas are a major drop-off point for drugs coming from South America to the United States. Between March and June, 1985 Holm also made five round trips between Miami and Minneapolis, including a round trip flight on March 30 and 31, 1985. The government offered evidence that a source of drug supplies from Miami generally makes a one day turnaround on a trip to Minneapolis. On the basis of this information, as well as the events of May 17 and June 6, 1985, Holm was convicted of possessing cocaine and marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Holm does not challenge his conviction for selling cocaine to Johnson on May 17, 1985. His argument is that the evidence is insufficient to support his conviction for possession of cocaine and marijuana on June 6, 1985. In order to convict Holm on Count III, the government was required to prove beyond a reasonable doubt Holm's knowledge, possession, and intent to distribute the controlled substances in question. 21 U.S.C. § 841(a).[2] On this appeal, Holm does not challenge the jury's findings of knowledge or intent, nor does he dispute that possession may be proven constructively. *United States v. Larson*, 760 F.2d 852, 857 (8th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985); *United States v. Caspers*, 736 F.2d 1246, 1249 (8th Cir.1984). He claims only that the evidence was insufficient to show his constructive possession of the drugs seized at the Eisenreich house on June 6.

■ Holm correctly argues that a conviction for constructive possession requires

---

**2.** Section 841(a) reads as follows:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance * * *.

the government to show that he had knowledge of the presence of contraband and control over it. *Larson*, 760 F.2d at 857; *Caspers*, 736 F.2d at 1249. Since he does not challenge the jury's finding as to his knowledge, Holm's sole contention is that he did not have control over the drugs seized on June 6 or control over Eisenreich. Holm argues that no direct physical evidence links him to the contraband, such as fingerprints on the seized containers, scales or other paraphernalia. He emphasizes that he was not present when the search occurred, that the drugs were not found in his room, and that no one identified him as their owner. Holm points to the narrowness of a possession charge, as contrasted with the broader offenses of aiding and abetting or conspiracy. However, constructive possession need not be proven by means of direct evidence. Circumstantial evidence is "intrinsically as probative as direct evidence" and may be the sole support for a conviction. *United States v. McCrady*, 774 F.2d 868, 874 (8th Cir.1985) (quoting *United States v. Two Eagle*, 633 F.2d 93, 97 (8th Cir.1980)). Nor was the government required to demonstrate Holm's presence at the search, the presence of drugs in his room, or his ownership of the seized drugs in order to prove that he was in constructive possession of them. *See Caspers*, 736 F.2d at 1249; *United States v. Montes–Cardenas*, 746 F.2d 771, 779 (11th Cir.1984); *United States v. Hill*, 589 F.2d 1344, 1349–50 (8th Cir.), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979). Further, if the government can prove constructive possession by circumstantial evidence, it is immaterial that a broader charge might have been available. Our sole concern is whether the evidence actually submitted was sufficient to sustain the jury's verdict on the crime charged.

In considering the sufficiency of the evidence, we must view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences which may logically be drawn therefrom. *United States v. Resnick*, 745 F.2d 1179, 1185 (8th Cir.1984) (citations omitted). The evidence need not exclude every reasonable hypothesis of innocence, but simply "be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *United States v. Wells*, 721 F.2d 1160, 1161 (8th Cir.1983) (quoting *United States v. Taylor*, 599 F.2d 832, 838 (8th Cir.1979)). If the evidence rationally supports two conflicting hypotheses, a reviewing court will not disturb a conviction. *United States v. Keck*, 773 F.2d 759, 769 (7th Cir.1985). Indeed, this court may overturn the verdict only if the evidence properly viewed is such that "a reasonable-minded jury *must* have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense." *United States v. Hakeem Freeland Segon Funisho Noibi*, 780 F.2d 1419, 1421 (8th Cir.1986) (citing *United States v. Netz*, 758 F.2d 1308, 1310 (8th Cir.1985) (per curiam)).

■ With the governing legal principles and appropriate standard of review in mind, we turn to a consideration of the evidence. First, the government offered circumstantial evidence that Holm was either the source of the seized drugs or that he participated in their transportation to Eisenreich's house. This evidence was relevant to Holm's constructive possession of the drugs on June 6, 1985. *See United States v. Wajda*, 810 F.2d 754, 763 (8th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987); *United States v. Buckhanon*, 505 F.2d 1079, 1081 (8th Cir.1974); *United States v. Madden*, 482 F.2d 850, 851–52 (8th Cir.), *cert. denied*, 414 U.S. 1026, 94 S.Ct. 453, 38 L.Ed.2d 318 (1973). Holm's opportunity to supply Eisenrich and Johnson with drugs was evidenced by his frequent trips from southern Florida to Minneapolis and the Bahamas, together with information that the Bahamas are a major drop-off point for drugs entering the United States from South America. Holm's substantial expenses were circumstantial evidence of a source of income apart from the gifts and occasional jobs to which he testified. *See United States v. Galyen*, 798 F.2d 331, 333 (8th Cir.1986). Most importantly, Johnson gave Rainville specific information identifying

Holm as the source of the seized drugs. He effectively identified Holm by referring to their longstanding acquaintance and by accurately describing Holm's place of residence and travel patterns. He also explicitly told Rainville that "Dave" was the source for both the May 17 and June 6 transactions. In particular, when Rainville expressed interest in larger quantities of cocaine after the May 17 deal, Johnson told him that nothing could be arranged until Dave had made another trip to Florida. Independent evidence confirmed that Holm left Minneapolis for Florida after May 17, returning to the Eisenreich house one day before the June 6 raid. Johnson had no drugs to sell to Rainville in the intervening period.

Second, the government offered evidence that Holm was staying at Eisenreich's house when the drugs were seized. Although mere presence or association with a person who controls drugs is insufficient by itself to prove possession, both are circumstantial evidence of possession. *See Larson*, 760 F.2d at 858; *United States v. Batimana*, 623 F.2d 1366, 1369 (9th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980). In a bedroom of the Eisenreich house, officers found clothes, a large briefcase, and other personal effects which Holm identified as his at the trial. Holm's passport and other identifying items were also found in the room. Although Holm himself was not present at the time of the search, two officers stationed at the house saw him pull into the driveway, then back out and drive away when he noticed them. This evidence supports an inference that Holm was present in Eisenreich's house shortly before the raid and that he had intended to return when the raid was in progress.

Third, the government offered evidence that Holm had the ability to exercise control over drugs located at the Eisenreich house while he was staying there. Johnson's testimony that Holm exercised control over drugs during the May 17, 1985

sale in Eisenreich's house was circumstantial evidence of his ability to control drugs found in the same location on June 6, 1985. Johnson's testimony as to the earlier sale was unambiguous and specific. He testified to the time of the transaction, its location, the controlled substance involved, its precise quantity, and the participants. His testimony was clear and convincing evidence of Holm's control over drugs in the Eisenreich house on May 17, 1985. *United States v. Evans*, 697 F.2d 240, 248–49 (8th Cir.), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983). *Compare United States v. Horvath*, 731 F.2d 557, 560 (8th Cir.1984). For that reason, Johnson's testimony was relevant to Holm's ability or capacity to control drugs located in the same house at the later date. *See* Fed.R.Evid. 404(b); [3] *Galyen*, 798 F.2d at 332; *United States v. Robinson*, 782 F.2d 128, 130 (8th Cir.1986); *United States v. DeLuna*, 763 F.2d 897, 913 (8th Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); *United States v. Kilrain*, 566 F.2d 979, 984 (5th Cir.), *reh'g denied*, 569 F.2d 1155, *cert. denied*, 439 U.S. 819, 99 S.Ct. 80, 58 L.Ed.2d 109, *reh'g denied*, 439 U.S. 997, 99 S.Ct. 599, 58 L.Ed.2d 670 (1978). And, as the parties have correctly argued, the essence of constructive possession is not direct, physical control, but the ability to reduce an object to actual possession; otherwise, constructive possession would have no meaning at all. *United States v. Simon*, 767 F.2d 524, 527 (8th Cir.), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985); *United States v. Caballero*, 712 F.2d 126, 130–31 (5th Cir.1983); *Batimana*, 623 F.2d at 1369. It is enough if one person is sufficiently associated with another having physical possession that he is able to produce a controlled substance for a customer. *Wajda*, 810 F.2d at 762–63; *Caspers*, 736 F.2d at 1249.

Finally, the government offered evidence that Holm was in fact able to exercise

---

**3.** Rule 404(b) reads in part as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of * * * opportunity, * * * preparation, plan, * * * or absence of mistake or accident.

control, perhaps with Eisenreich, of the seized drugs themselves. Constructive possession may be joint among several defendants; it need not be exclusive. *Caspers*, 736 F.2d at 1249; *Wells*, 721 F.2d at 1162. A drug note found in the bedroom with Holm's personal possessions was written on paper identical to that of a drug note found in the Eisenreich basement. Another note found in the bedroom contained the initials "T.E." and a quantity number, from which the jury could infer a transfer of that quantity between Holm and Tim Eisenreich. These notes were evidence of Holm's constructive possession of the seized drugs. *Wajda*, 810 F.2d at 762. In addition, Holm's hasty retreat from the Eisenreich house upon finding police officers stationed there was circumstantial evidence of his constructive possession of the drugs found on the premises. *Montes–Cardenas*, 746 F.2d at 779; *United States v. Morando–Alvarez*, 520 F.2d 882, 884–85 (9th Cir.1975). Holm contends that Johnson considered Eisenreich as his main source for drugs, that Johnson always attempted to contact Eisenreich to arrange deals, and that he reached Holm on May 17 essentially by mistake. We appreciate the implications of this argument, but where the evidence supports a finding of constructive possession, it is immaterial that a witness may have dealt with another party on a more direct or more frequent basis.

The evidence in this case is more compelling than that held insufficient in the two cases relied upon by Holm, *United States v. Larson, supra*, and *United States v. Ward*, 703 F.2d 1058 (8th Cir.1983). In *Larson*, the defendant Burgess had checked out of a motel room occupied by Larson some seven hours before cocaine was found there, and no evidence suggested an intent on her part to return. 760 F.2d at 858. Here we have evidence that Holm intended to return to Eisenreich's house on June 6, and that he fled the scene only when he saw officers stationed there. In addition, the evidence offered here to show that Holm was the source of the seized drugs and that his association with Eisenreich included drug transactions was more substantial than that presented in

*Larson. Id.* In *Ward*, the evidence against defendant Rose showed only that she had lived with Ward, who was observed at a barn in which marijuana was grown, and that her fingerprints were found on several cups located in the barn. Nothing suggested that she was aware of or participated in Ward's drug activity. 703 F.2d at 1062. In this case, by contrast, we have evidence of Holm's direct participation in a drug transaction at the Eisenreich house and evidence that he was the source of the seized drugs, in addition to proof of his general association with Eisenreich and the discovery of the drug notes which, like the fingerprints in *Ward*, directly link him to the contraband.

*United States v. Montes–Cardenas, supra*, involves facts which are more closely analogous to those of the present case. There the defendant was also absent when the search was made. He was not explicitly identified as the owner of the seized drugs, nor were drugs found among his personal belongings. 746 F.2d at 775, 779. Nevertheless, the court relied upon a body of circumstantial evidence to sustain a finding of constructive possession. This evidence included testimony by an accomplice which described the defendant's drug dealings and which identified him as a partner of the person in whose house cocaine was found. The defendant's briefcase, containing a number of identifying documents, was found in the same house. *Id.*

Although the question is close, we are satisfied that a rational trier of facts could conclude that Holm was in constructive possession of the drugs seized at the Eisenreich house on June 6, 1985. The evidence supported inferences that Holm was the source of or transported the drugs in question, that he was staying with Eisenreich at the time of seizure, that he had the ability to control drugs located at the house when he was staying there, and that he exercised joint control with Eisenreich over the drugs themselves. Alternatively, the jury could find that Holm and Eisenreich were engaged in a joint venture to distribute cocaine and marijuana, and this supports an inference that Holm was in con-

structive possession of the drugs. *United States v. Dupuy*, 760 F.2d 1492, 1500 (9th Cir.1985); *United States v. Raper*, 676 F.2d 841, 847 (D.C.Cir.1982).

The parties also debate whether this court should apply the concurrent sentence doctrine to Count III. In some circumstances, this doctrine allows a reviewing court to decline to pass on the validity of one count of an indictment when the sentence imposed is concurrent with the sentence for a valid conviction on another count. *United States v. Kirk*, 723 F.2d 1379, 1381 (8th Cir.1983), *cert. denied*, 466 U.S. 930, 104 S.Ct. 1717, 80 L.Ed.2d 189 (1984). We recognize that we may in our discretion invoke this rule, but we believe that it is not desirable to do so in this case, which involves a direct appeal and in which Holm was exposed to a substantial risk of adverse collateral consequences from the conviction on Count III. *See United States v. Bass*, 794 F.2d 1305, 1311 (8th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986); *United States v. Sanders*, 541 F.2d 190, 193–94 (8th Cir.1976), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784, *reh'g denied*, 430 U.S. 941, 97 S.Ct. 1573, 51 L.Ed.2d 788 (1977).

We affirm the conviction on Count III.