UNITED STATES of America, Appellee,

v.

Richard Earl MADKINS, Appellant.

No. 92–3043.

United States Court of Appeals,
Eighth Circuit.

Submitted March 19, 1993.

Decided June 4, 1993.

Gregory Bryant, Little Rock, AR, argued, for appellant.

Linda Lipe, Asst. U.S. Atty., Little Rock, AR, argued, for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and STOHR,* District Judge.

JOHN R. GIBSON, Circuit Judge.

Richard Earl Madkins appeals from his conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (1988) and 18 U.S.C. § 924(e) (Supp. III 1991). Madkins had three separate felony convictions for violent crimes. The only issue on appeal is whether there was sufficient evidence that he possessed the firearm in question. As we conclude that there was not, we reverse and order that the district court enter a judgment of acquittal.

A security guard at the Bank of West Memphis in West Memphis, Arkansas testified that he saw an automobile parked on the bank parking lot with its motor running. There were two individuals in the car and a Tennessee license tag was displayed in the rear window. The security guard became suspicious and called the West Memphis police. Before the police arrived, the security guard saw the car leave the bank parking lot, drive across the street, and park in the lot of an auto parts store. The guard did not identify the individuals in the car and never saw them get out of the car while it was on the bank's lot.

When the police arrived, they saw the car in the auto parts store lot and observed two black males standing outside of it. One of them, Madkins, was working under the hood of the car and was holding a can of antifreeze. As the officers approached, the other

---

* The HONORABLE DONALD J. STOHR, United States District Judge for the Eastern District of Missouri, sitting by designation.

man, Lester Page, walked around, entered the car on the driver's side, and sat down behind the steering wheel. One officer saw Page lean slightly toward the center of the front seat, as if resting his arm on a console or armrest. Madkins continued to work underneath the hood. Officer Blair approached Madkins, who continued to work and said nothing in response to the officer's questions. Madkins handed the officer a Tennessee driver's license when the officer requested identification.

Meanwhile, other officers approached the car and attempted to converse with Lester Page. One of the officers observed the handle of a pistol protruding from beneath the center of the front seat. The officers then arrested Madkins and Page and searched the vehicle. They recovered a .380 caliber semiautomatic pistol, a pair of gloves, and a piece of nylon pantyhose with a knot tied in it.

Page pled guilty to a state weapons charge and was not a defendant in this case. The grand jury indicted Madkins on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e). The district court denied Madkins' motion for acquittal at the close of the government's evidence, and the jury convicted Madkins. The court later sentenced him to 210 months imprisonment.

■ The sole issue on appeal is whether the evidence was sufficient to convict Madkins of possessing the weapon. Our standard of review for sufficiency of evidence is very clear:

In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict. We then uphold the conviction only if it is supported by substantial evidence.

*United States v. Plenty Arrows,* 946 F.2d 62, 64 (8th Cir.1991) (citations omitted); *see also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The government urges us to affirm, relying primarily on *United States v. Flenoid,* 718 F.2d 867 (8th Cir.1983), in which we stated:

Mere presence as a passenger in a car from which the police recover contraband or weapons does not establish possession. But testimony that the defendant may have placed something in the spot where the police later found the weapon can support a finding of possession.

*Id.* at 868 (citations omitted). In *Flenoid,* a police officer testified that the defendant had bent over and reached under the car seat just as the officers approached the car. *Id.* The police later recovered a gun from beneath the seat. *Id.* We recognized that "testimony that the defendant may have placed something in the spot where the police later found the weapon can support a finding of possession." *Id.*

Madkins argues that we should recognize Judge Heaney's opinion in *United States v. Blue,* 957 F.2d 106, 107–08 (4th Cir.1992) (Heaney, J., sitting by designation). In that case, the court held that a passenger's dipping his shoulder as if reaching under the car seat where the police later found a gun was a fact insufficient to establish possession. *Id.*

While *Flenoid* and *Blue* might allow us to establish Page's possession of the weapon, neither decision is helpful with respect to Madkins. There was absolutely no evidence that Madkins put the gun under the front seat of the car, nor does the evidence directly establish even the "mere presence" of Madkins as a passenger in the car. *Cf. United States v. Rankin,* 902 F.2d 1344, 1345–46 (8th Cir.1990); *United States v. Williams,* 897 F.2d 1430, 1431 (8th Cir.1990). The arresting officers testified that during the entire encounter Madkins remained outside of the car working under the hood.[1] At most, there is an inference of Madkins' "mere presence as a passenger in the car" based on a combination of the security guard's testimony that there were two occupants in the car before it crossed the street and the police officer's testimony identifying Madkins in front of the car while Page was in the driver's seat. Un-

---

1. Two officers testified that Madkins was working under the hood and one of them said that Madkins was holding a can of anti-freeze. Nothing in this testimony even suggests the dissent's inference that Madkins was "pretending" to work under the hood.

der *Flenoid*, Madkins's mere presence in the car is insufficient to support a finding that he possessed a gun. *See Flenoid*, 718 F.2d at 868.

No witness testified to seeing Madkins with the gun in his possession. The police found no fingerprints on the gun and no evidence as to who owned it. Likewise, there was no testimony as to the ownership of the car. We cannot reasonably infer from the fact that Madkins was working under the hood of the car while Page sat in the driver's seat that Madkins owned the car or the gun. There is no evidence in this case, as there was in *Flenoid* and *Blue*, of Madkins bending over, or even dipping his shoulder, near the place where the police later found the gun. *Cf. id.; Blue*, 957 F.2d at 107.

We have recognized limits to our sufficiency of the evidence test. *See e.g., United States v. Larson*, 760 F.2d 852 (8th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985). In *Larson*, we found evidence that the defendant had checked into a motel with another defendant insufficient to support an inference to be drawn that the two were in the drug business together, even when coupled with other circumstantial evidence such as familial and financial relationships. *Id.* at 857–58. We said:

> The Government's evidence is so scant that the jury could only speculate as to . . . [the other defendant's] guilt. The evidence is such that a reasonably minded jury *must* have a reasonable doubt as to [the other defendant's] knowledge of the existence of the cocaine or of her intent to aid and abet [the principal defendant's] drug scheme.

*Id.* at 858 (citations omitted). In another sufficiency of the evidence case, we concluded that "[t]he evidence must do more than merely raise suspicion or possibility of guilt." *United States v. Wilson*, 665 F.2d 825, 830 (8th Cir.1981), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982).

The dissent argues for a conclusion that is contrary to the direct holding of this court in *Flenoid* that mere presence as a passenger in a car does not establish possession of a weapon later found in the car. An essential element of the charge here was possession of the weapon, and the evidence did not support this. To paraphrase *Larson*, the government's evidence of possession is so scant that the jury could only speculate as to Madkins' guilt. The evidence is such that "a reasonably minded jury *must* have a reasonable doubt" as to Madkins' knowledge or possession of the gun. 760 F.2d at 858.

Considering all of the evidence in the light most favorable to the verdict and accepting as established all reasonable inferences in favor of the verdict, we conclude that the evidence admitted at trial was insufficient to establish that Madkins possessed the weapon. We acknowledge that the felon in possession of a firearm charge is generally a simple case and easy to prove. Here, however, the government failed to establish the key element of possession.

■ In its brief, the government volunteered considerable "background" information. The government stated that Madkins was charged under the "Attorney General's Triggerlock project." The government then informed us that there had been a series of robberies in West Memphis of people leaving banks with large amounts of cash. One of these robberies occurred at the Bank of West Memphis a few days before the events described in this case. Apparently, this "series" began after May, 1991, when Madkins was released from prison. Several of the robbery victims had been shot and one had died. The government alleged that a juvenile shot in one of the robberies had made a statement at the emergency room that Madkins had solicited him to commit the robbery and had instructed him to shoot the victim in the abdomen. The government then compared vehicles allegedly involved in these robberies with vehicles available to Madkins.

■ With admirable candor, the government tells us "[t]he jury was *not aware* of these facts and they cannot be considered in determining the sufficiency of the evidence." The government is correct—we will not consider material that is not in the record. *See, e.g., Rebuck v. Vogel*, 713 F.2d 484, 486 (8th Cir.1983); *United States v. Drefke*, 707 F.2d 978, 983 (8th Cir.), *cert. denied*, 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 321 (1983). Re-

gardless of whether Madkins is criminally disposed or a very bad person, our Constitution requires that he be convicted only on properly admitted evidence establishing the charges against him. If the government possessed admissible evidence that Madkins committed the other alleged crimes discussed in the brief, it could have charged him with those crimes. These statements in the brief are an attempt to prejudice this court's examination of the case, and are highly inappropriate.

We reverse and remand to the district court with instructions to enter a judgment of acquittal.

WOLLMAN, Circuit Judge, dissenting.

Because I believe that the government introduced sufficient evidence to support Madkins' conviction, I respectfully dissent from the court's opinion.

As I read the record, the jury could rightfully find from the testimony that Madkins and Page were in the automobile that was parked in the bank's parking lot and that they (which one drove we do not know, but that is not important) then drove the automobile to the parking lot of the auto parts store, where Madkins left the vehicle and then pretended to work under the hood while holding a can of antifreeze. Although it is true that the government offered no proof that Madkins (or Page, for that matter) owned the automobile, the circumstances certainly permit (if indeed they do not in fact compel) a finding that both Page and Madkins were in possession and control of the vehicle and that they had put the pistol, along with the pair of gloves and knotted pantyhose, into the automobile in preparation for the commission of a crime. To find otherwise, the jury would have had to assume that Madkins was a stranger to the scene and that he was attempting to replenish the automobile's supply of antifreeze out of the goodness of his heart. We expect jurors to possess many traits, but credulity is not among them, and it would be a credulous juror indeed who would draw that inference

from the circumstances that led to Madkins' arrest.

I would affirm the conviction.