**UNITED STATES of America, Appellee,**

v.

**Byron K. HANEY, Appellant.**

No. 93–2746.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1993.

Decided May 9, 1994.

Carter C. Law, St. Louis, MO (argued), for appellant.

Thomas J. Mehan, Asst. U.S. Atty., St. Louis, MO (argued), for appellee.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

McMILLIAN, Circuit Judge.

Byron K. Haney appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Missouri upon a jury verdict finding him guilty of one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), one count of possession with intent to distribute cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and one count of use of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). The district court sentenced Haney to a total of 115 months imprisonment for the possession with intent to distribute crack cocaine and possession of firearms counts, and 60 months imprisonment for the possession of a firearm in connection with a drug trafficking offense, to be served consecutively, four years supervised release, and a $150.00 special assessment. The district court then ordered that the terms of imprisonment imposed by its judgment on the federal offenses run consecutively to an undischarged state sentence Haney received in 1985. For reversal, Haney argues the district court erred in finding the evidence sufficient to support the jury's verdict that he (1) possessed a firearm, (2) possessed crack cocaine, and (3) intended to distribute the crack cocaine, and erred in refusing to order his federal sentence to run concurrently with his undischarged state sentence in accordance with United States Sentencing Guideline (U.S.S.G.) § 5G1.3(c). For the reasons discussed below, we affirm the judgment of the district court.

[1]. The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Mis-

## I. BACKGROUND

On February 6, 1992, a confidential informant, Tony Evans, notified Detective Murphy of the Kirkwood Police Department that Haney would be making a delivery of crack cocaine to an address in Rock Hill, Missouri, in exchange for food stamps. Evans told Murphy that Haney was a thirty-one-year-old African–American male and that he would be travelling in a black and gray pickup truck. The truck was owned by Evans. Evans told Murphy that Haney would be accompanied by Michelle Robinson and Evans, himself. Murphy contacted his supervisor, Sergeant Suchanek, to discuss a plan to stop the truck in which Haney would be a passenger to arrest him for the delivery of the crack cocaine. Suchanek contacted Sergeant Paul Arnett of the Rock Hill Police Department and together they assembled a six-person team.

A few hours after receiving the first phone call, Murphy received a second call from Evans, informing Murphy that he, Michelle Robinson and Haney were on their way to Rock Hill, and that Haney was carrying a gun. Murphy mobilized his team. When the officers stopped the truck, Arnett drove around and parked at a forty-five degree angle in front of the truck. He got out of his police car and stood in front of the truck. Arnett instructed Evans, Haney and Robinson to raise their hands into the air and they complied. Arnett testified that he then observed Haney drop one hand, reach down behind his back and pull out what appeared to be the butt of a revolver. Arnett stated that he then saw Haney reach above the dash of the truck and drop something back on the seat and then quickly put his hand back up in the air. Arnett made an in-court identification of Haney as the individual with the gun in his hand. Arnett identified a gun introduced at trial as the weapon he saw in Haney's hand. He also testified that the gun had a dark butt, which the gun introduced at trial had.

souri.

Arnett testified that the series of events involving Haney's actions while inside the truck occurred very quickly and that, by the time he recognized the gun and began to holler "gun" at his fellow officers who had been approaching from the rear of the truck, the officers had already started pulling individuals out of the truck. Detective Roberson discovered the weapon on the front seat of the truck. No fingerprints were taken from the gun. Roberson did a pat down search and handcuffed Haney.

Upon arrival to the police department, Haney was placed in a chair against a wall. When Murphy began booking Haney on a state gun charge, Haney abruptly jumped up from his seat and loudly gestured toward another arrested person. When told to sit down, Haney complied but changed his seat. At that time, Murphy observed a clear package containing crack cocaine in rock form in the chair that Haney originally occupied. Also at that time, Murphy seized currency and food stamps from Haney.

At trial, a criminologist, Bryan Hampton, testified that the rocks of crack cocaine are crumbly and tend to fall apart when handled. Because of its porous nature, the crack falls apart if moved or if weight is put on it. Hampton also testified that it is possible for a crack cocaine addict to smoke 6.57 grams, the amount found in the bag, during a two-day period. However, Hampton testified that, based upon his experience, the 6.57 grams of crack cocaine exceeded an amount typically used for personal use and would be considered a distributable amount.

Murphy testified that, based upon training and expertise, the individual rocks of crack cocaine found in the bag are "twenty cent pieces" because they sell for twenty dollars each. Murphy testified that crack cocaine users usually only have one or two rocks on them and that the number of rocks found on Haney's chair is a distributable amount. Murphy also testified that someone who smoked 6.57 grams of crack cocaine in a day would probably die; but that it would be possible to smoke that much in two days if smoked continuously.

Michelle Robinson and Haney testified that the two had been dating since October 1991 and that, prior to that, Robinson and Evans had been in a relationship for three years where Evans physically abused Robinson. Haney testified that Evans, jealous and vengeful over losing Robinson to Haney, set him up. Haney testified that he had been doing repair work on his father's house in Berkeley, Missouri, and needed to obtain dry wall to complete the repairs, but he had no car. Haney testified that he believed Evans was giving him a ride on the day in question so that he could obtain supplies. Haney testified that Evans told him while on their way to get supplies that he (Evans) had to make a stop in Rock Hill.

Robinson testified that she did not see drugs or a gun on Haney on the day in question. She testified that she believed Evans had used his status as a police informant to set other people up with the police. She testified that she believed Evans set Haney up.

Haney was charged in a three-count indictment with unlawful possession of a firearm, possession with intent to distribute crack cocaine, and use of a firearm in relation to a drug trafficking crime. A jury trial ensued. At the close of the government's evidence and close of all evidence, Haney filed motions for judgment of acquittal which the district court denied. The jury returned guilty verdicts on all three counts.

At the sentencing hearing, it was determined that Haney's total offense level was twenty-six and his criminal history category IV, resulting in a range of 92 to 115 months under the sentencing guidelines, to be followed by a five-year consecutive period of imprisonment for the use of a firearm in relation to a drug trafficking crime. Based upon those findings, the district court imposed a total sentence of 115 months on the possession of firearm and possession with intent to distribute crack cocaine counts, and 60 months on the use of a firearm in connection with drug trafficking count, to be served consecutively, for a total of 175 months.

Haney had been convicted in 1985 in state court of attempted armed robbery and armed criminal action. He had been paroled at the time he was found in possession of the fire-

arm and cocaine base in the present case. Haney had been sentenced to a total of twelve years for the state offenses, and at the time of sentencing for the instant federal offenses, he had served seven years and nine months of his state prison term. His state parole was revoked as a result of the federal charges. Following his conviction for the federal charges, the district court ordered that the terms of imprisonment imposed by its judgment on the federal offenses run consecutively to the term of Haney's undischarged state sentence. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Haney argues the district court erred in finding that sufficient evidence supported the jury's verdict that he possessed a firearm, possessed crack cocaine, and intended to distribute the crack cocaine. We disagree.

"In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." *United States v. Madkins,* 994 F.2d 540, 541 (8th Cir.1993) *(Madkins)* (citing *United States v. Plenty Arrows,* 946 F.2d 62, 64 (8th Cir.1991)). After so viewing the evidence, this court will "reverse only if a reasonable jury could not have found guilt beyond a reasonable doubt." *United States v. Davis,* 785 F.2d 610, 619 (8th Cir.1986).

Haney first argues the evidence was insufficient to support the jury verdict on count I, being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He contends that no fingerprints were taken from the gun, the gun was found in a truck that belonged to someone else, and no evidence was admitted with respect to ownership of the gun. Haney argues that, because Arnett did not warn fellow officers approaching from behind the pick-up truck that he thought he saw Haney holding a gun, Arnett's testimony is incredible as a matter of law because any trained police officer would warn fellow team members that a potentially dangerous suspect had a gun. Haney highlights that Arnett's testimony regarding his possession of the gun is directly contradicted

by Michelle Robinson's testimony that he had no weapons on him on the day in question. Haney maintains that, under these circumstances, no reasonable juror could find that he possessed the gun found in the pick-up.

To the extent Haney challenges the credibility of witnesses, such as Arnett's explanation regarding his failure to warn his fellow officers that Haney possessed a gun, Haney raises questions that were entrusted to the jury. *United States v. Rankin,* 902 F.2d 1344, 1346 (8th Cir.1990); *see also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). With respect to the contradictory testimony given by Arnett and Robinson, "[i]t is for the jury and not this Court to evaluate the credibility of trial witnesses. Jurors may credit the testimony of one witness and disbelieve that of several others. That is the jury's prerogative." *United States v. Bruce,* 704 F.2d 1048, 1049 (8th Cir.1983).

Haney also argues that we should recognize *Madkins* and *United States v. Blue,* 957 F.2d 106, 107–08 (4th Cir.1992) *(Blue),* as controlling the present case. In *Madkins,* this court held that there was insufficient evidence to support a finding that the defendant was in possession of a gun found in a car in which the defendant was working under the hood because no witness testified to seeing the defendant with the gun in his possession, the police found no fingerprints on the gun, and no evidence was presented as to who owned the gun. *Madkins,* 994 F.2d at 542. Contrary to Haney's assertion, *Madkins* is not helpful with respect to the present case. In *Madkins,* the arresting officers testified that the defendant remained outside of the car working under the hood and was never seen inside the car. In sharp contrast, in the present case, arresting officers testified that Haney was a passenger in the pick-up truck in which the gun was found. Moreover, in *Madkins,* no witness testified to seeing the defendant with a gun in his possession. In sharp contrast, in the present case, Arnett testified that he saw Haney holding what appeared to be a gun and further testified that he saw Haney drop an object on the seat of the truck in the precise location where the gun was found.

Haney argues that, in the present case, like in *Blue*, the government did not produce fingerprints or any other physical evidence which would link him with the gun, and the car in which the gun was found did not belong to him. In *Blue*, the court held that, under the circumstances, the defendant's dipping his shoulder as if reaching under the car seat where the police later found the gun was in fact insufficient to establish possession. *Blue*, 957 F.2d at 107–08. Haney fails to mention that the *Blue* court, in reversing the defendant's conviction, highlighted the lack of "testimony that [the defendant] had been seen with the gun." As mentioned earlier, in the present case, Arnett testified at trial that, during broad daylight, he stood directly in front of Evans's pick-up truck, looked directly at Haney, and saw Haney lower his hand to his waist area and then bring his hand back up holding what appeared to be "the butt of a revolver." Arnett testified that he then saw Haney drop the object down on to the seat on which the gun was discovered only moments later. The gun was identified at trial by Arnett as that which he saw in Haney's hand.

Viewing the evidence in the light most favorable to the verdict, we hold that there was sufficient evidence to support the conviction. *See United States v. Williams*, 941 F.2d 682, 683 (8th Cir.1991) (sufficient evidence supported the defendant's conviction of being felon in possession of firearm where arresting officer testified to seeing the defendant pull out a gun and throw it down onto pavement where it was later discovered); *see also United States v. Rankin*, 902 F.2d 1344, 1345–46 (8th Cir.1990) (sufficient evidence supported the defendant's conviction where officer testified that defendant dropped dark object to ground moments before officer retrieved dark gun from that location).

■ Haney next challenges the district court's finding that sufficient evidence supported the jury's verdict that he possessed crack cocaine. Haney contends that no reasonable juror could find that he possessed the crack discovered on the chair at the police station because no drugs were actually found on his person, and no witness testified as to having seen drugs on Haney's person.

At trial, the government had the burden of proving that Haney knowingly possessed crack cocaine with the intent to distribute it. 21 U.S.C. § 841(a)(1); *see United States v. Shurn*, 849 F.2d 1090, 1093 (8th Cir.1988) (citing *United States v. Cardenas*, 748 F.2d 1015, 1019 (5th Cir.1984)). After reviewing the record, we conclude that the evidence is sufficient to establish that Haney had actual possession of the crack cocaine. The evidence adduced at trial showed that the crack cocaine was not in the chair in the booking room of the Rock Hill Police Department before Haney sat in the chair. The jury could have found that the reason Haney yelled at another arrested person was to distract the police while he moved away from the chair in which he dumped the crack cocaine. Detective Murphy testified that, after Haney changed seats, he discovered the plastic bag containing the crack cocaine on the chair in which Haney was originally seated. After Murphy told Haney that he was to be charged with possession of the crack, Haney replied that Murphy could not "put that on him" because it was not on his person. Based on the record as a whole, we are satisfied there is ample evidence of actual possession to support Haney's § 841(a)(1) conviction.

■ The record also contains sufficient evidence to support the second element of § 841(a)(1). A finding of intent to distribute may be premised upon either direct or circumstantial evidence. *United States v. Matra*, 841 F.2d 837, 840–41. The jury heard evidence that a confidential informant told Arnett that Haney would be making a delivery of crack cocaine in exchange for food stamps, and that $371.00 in currency and $97.00 in food stamps were found on Haney. The jury also heard the testimony regarding the crack cocaine found on Haney's chair in the booking room at the police station. Evidence of Haney's knowing possession of the gun was also presented to the jury, and it is settled that the presence of a firearm is one factor from which a jury may infer an intent to distribute a controlled substance. *Id.* at 841.

Criminologist Hampton testified that the weight of the crack cocaine was 6.57 grams,

and that if an addict ingested that quantity in one or two days he or she would probably die. Hampton also testified that the number of rocks was characteristic of a distributable amount, not an amount for personal use. Detective Murphy testified that, based upon his training and expertise, the individual rocks of crack cocaine found in the bag on Haney's chair were "twenty cent pieces" because they sell for twenty dollars each. Murphy testified that crack cocaine users usually only have one or two rocks on them and that the number of rocks found on Haney's chair was a distributable amount. We believe that the evidence was sufficient for the jury to find that Haney intended to distribute the crack cocaine.

## III. SENTENCING

■ Haney asserts that the district court improperly applied U.S.S.G. § 5G1.3 in ordering that his federal sentence run consecutively to his undischarged state sentence for attempted armed robbery first degree and armed criminal action and that, instead, the district court should have imposed a concurrent sentence. Specifically, Haney contends that, for purposes of § 5G1.3(c), the district court erred in finding that 18 U.S.C. § 924(c) was the federal analog to the Missouri offense of armed criminal action. We review *de novo* the district court's application of the Sentencing Guidelines. *United States v. Gullickson*, 981 F.2d 344, 346 (8th Cir.1992).

Section 5G1.3(c) provides that a consecutive sentence should be imposed for the instant offense "to the extent necessary to achieve a reasonable incremental punishment for the instant offense." In order to determine what constitutes a "reasonable incremental punishment," the district court considered the following commentary in determining Haney's sentence:

To the extent practicable, the court should consider a reasonable incremental penalty

to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 had all of the offenses been federal offenses for which sentences were being imposed at the same time.

U.S.S.G. § 5G1.3, Application Note 3.

The aim of U.S.S.G. § 5G1.3(c) is for the district court to fashion a total sentence that would be roughly equivalent to what the defendant would have received if he or she had been sentenced at the same time in federal court for all relevant offenses, both state and federal, as if they had been federal offenses.

When the district court conducted the § 5G1.3(c) analysis, it concluded that the resulting sentence far exceeded the sentence the district court had imposed. Haney was convicted, along with first degree attempted robbery, of armed criminal action under Mo. Rev.Stat. § 571.015 (1978). Haney and his co-felon's attempted robbery of a Red Lobster Restaurant during business hours, was accompanied by the use and discharge of a firearm. The district court found, for purposes of constructing a hypothetical guideline under § 5G1.3(c), that Haney's armed criminal action conviction was the federal equivalent to 18 U.S.C. § 924(c). We agree.

Missouri's armed criminal action statute, Mo.Rev.Stat. § 571.015, provides that any person who commits any felony under the laws of the State through the use of a dangerous or deadly weapon is also guilty of the crime of armed criminal action.[2] The very purpose of § 571.105 "is to authorize additional punishment for those using weapons in the perpetration of a crime." *State v. McTush*, 827 S.W.2d 184, 188–89 (Mo.1992) (Blackmar, J., concurring). Title 18 U.S.C. § 924(c) provides the federal equivalent to § 571.105.[3] The purpose of § 924(c) is to

2. Mo.Rev.Stat. § 571.015.1 provides:
[A]ny person who commits any felony under the laws of this state by, with, and through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the department of corrections and human re-

sources for a term of not less than three years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon.

3. 18 U.S.C. § 924(c)(1) provides:

create a separate basis of criminal liability for the possession or employment of any firearm, destructive device, or dangerous weapon in the commission of a crime because of the potential danger posed to human life by such conduct. Section 571.105 is utilized as a sentence enhancement provision comparable to § 924(c). *See United States v. Singleton,* 16 F.3d 1419, 1428 (5th Cir.1994) (recognizing that Missouri's armed criminal action statute "is similar in purpose to § 924(c)"). Both statutes make criminal and proscribe the same behavior: the use of a dangerous or deadly weapon in the commission of a felony.

In the present case, the underlying § 924(c)(1) federal conviction for use of a firearm in connection with a drug trafficking crime would have triggered a punishment section which instructs that "[i]n the case of his [or her] second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years ... nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment." 18 U.S.C. § 924(c). The term of imprisonment resulting from the hypothetical guideline produced by the § 5G1.3 analysis includes a consecutive term of twenty years for Haney's second § 924(c) conviction. To this effect, the district court stated:

> [I]f the Court were to consider the state offenses as federal offenses that were being sentenced at the same time as the three federal charges today, we follow that to its logical conclusion, it appears that the defendant would be looking at a term of incarceration that is far greater than what is suggested in the presentence report, because we do have an additional offense, state offense, that if considered a federal offense would carry a 20–year sentence, because it involved a firearm.

Sentencing Tr. at 14–15.

The district court concluded that, under the § 5G1.3(c) analysis, had Haney been sentenced as if all his offenses were federal offenses, he would have been ordered to serve a twenty-year consecutive sentence for the instant § 924(c) charge rather than the five-year consecutive sentence the district court imposed.

Had all Haney's offenses been federal offenses, he would have been subject to the statutorily mandated, twenty-year consecutive sentence specified in § 924(c) for a second § 924(c) conviction. Therefore, Haney will serve a lesser sentence in the present case than if the prior attempted robbery and armed criminal action offenses had been federal offenses, and, thus, the sentence imposed complies with § 5G1.3(c). Accordingly, we hold that the district court did not err in sentencing Haney to a 175–month term of imprisonment to run consecutively to his state sentence.

We affirm the judgment of the district court.

---

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....