165 F.3d 34
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Ronald ROBINSON, Defendant-Appellant.
 No. 98-2054.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 8, 1998.
Decided Oct. 21, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 1:97-CR-10021. Michael M. Mihm, Chief Judge.
 Before Hon. RICHARD A. POSNER, Chief Judge, Hon. WALTER J. CUMMINGS, Hon. JESSE E. ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 Ronald Robinson was convicted of possessing 10.1 grams of "crack" with intent to distribute and sentenced to 140 months in prison. He argues that the police officers who found the crack while executing a search warrant at his house violated the Fourth Amendment by forcibly entering without waiting a "reasonable" time after knocking and announcing their purpose. He also contends that the government failed to offer sufficient evidence of his intent to distribute the crack. We affirm.
 
 I.
 
 2
 In February 1997, police in Peoria, Illinois, obtained a state warrant authorizing them to search Robinson and his house for crack cocaine and related paraphernalia. Three officers wearing raid jackets emblazoned with "POLICE" front and back converged on the lighted front porch and knocked four times on the locked screen door. Within 15 seconds Robinson called out, "who is it?" He reached the door almost simultaneously, and for a couple of seconds he and the policemen eyed each other through a window in the door. Robinson disappeared from the window when an officer yelled, "police, search warrant," and one to three seconds later the officers forced open the screen and breached the inside door with a battering ram. Robinson was apprehended after a chase and struggle. The officers seized from him $980 in currency and found the crack scattered in the kitchen.
 
 
 3
 Police witnesses testified at trial that Robinson fled to the kitchen, where he tried to overturn the dining table after grabbing a plastic bag that contained two large pieces of crack weighing a total of 6.8 grams. Robinson ignored commands to stop, so a policeman pushed a refrigerator into his path. Robinson dropped the plastic bag when the refrigerator struck him but continued resisting until he and two officers fell down the basement stairs. The police arrested him and detained two women found in a downstairs bedroom and a man hiding in the kitchen. A crack pipe was discovered on the floor of the downstairs bedroom. Additionally, the officers recovered from the kitchen table numerous rocks of crack, including two packaged in individual plastic bags. From the floor they retrieved three more rocks, each weighing approximately two-tenths of a gram, and numerous loose, smaller pieces that Robinson had scattered when he tried to upset the table. These additional rocks, combined with the first 6.8 grams, yielded 10.1 grams total. Kevin Kirwan, a Peoria police officer who qualified without objection as an expert on the means and methods of crack distribution in the city, opined that the 10.1 grams of crack seized from Robinson's house was a distributable quantity.
 
 
 4
 Robinson was one of three defense witnesses. He denied possessing or even seeing crack and insisted that he never answered the knock on the front door. He was visiting, before church, he said, to do laundry and check on a car the homeowner was repairing for him. Robinson explained he was in the basement laundry room when the police arrived. He admitted losing his last job in November but never explained the $980, mostly in $10 and $20 bills. Robinson specifically denied possessing the 10.1 grams of crack for personal use. His girlfriend, another defense witness, testified that in February 1997 he was living with her at another address.
 
 
 5
 The defense also called Bobby Adams, the man found in the kitchen. Adams, who said that he and one of the women detained in the bedroom lived with the homeowner, insisted that he-not Robinson-looked out the front door and then ran. Adams said Robinson, a friend from church, was at the house doing laundry and waiting for his car to be finished. Adams denied that Robinson had possessed or used drugs at the house, but the government impeached him with his post-arrest, oral admissions that Robinson was packaging the crack when the police arrived, that he sold Adams three rocks for $60 moments before the police knocked, and that Robinson went to the door only to return with the police in pursuit. After the search Adams had pleaded guilty to a state charge of attempted possession of a controlled substance, but at trial Adams said he really was innocent of that offense.
 
 
 6
 Before trial Robinson had submitted a proposed jury charge on the lesser-included offense of simple possession of crack, 21 U.S.C. § 844(a), but at the close of the evidence he withdrew it. Robinson explained that his tendered instruction "was not consistent with the facts."
 
 II.
 
 7
 The Fourth Amendment generally requires that police officers announce their identity and purpose before forcibly entering a dwelling to execute a search warrant. Wilson v. Arkansas, 514 U.S. 927, 929, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). Robinson here concedes that the Peoria officers "knocked" and "announced," but he insists that after giving notice they did not delay their forced entry long enough "for somebody to respond to their presence." The district court, without deciding whether the police satisfied the knock-and-announce requirement before entering, held that compliance was excused because, once Robinson vanished, there existed exigent circumstances justifying immediate entry. Robinson disagrees that there existed exigent circumstances. We review a district court's findings of fact for clear error and its legal determination of "exigent circumstances" de novo. United States v. Bailey, 136 F.3d 1160, 1164 (7th Cir.1998).
 
 
 8
 We reject Robinson's contention that the officers entered too soon after knocking and announcing their purpose, and, accordingly, we need not decide whether exigent circumstances excused compliance with the knock-and-announce rule. Authorities may enter by force if "refused admittance," and not answering the door is a form of refusal. See United States v. Bragg, 138 F.3d 1194, 1195 (7th Cir.1998). For police to infer refusal from silence or inaction, they need only " 'pause long enough for someone to answer or come to the door." ' See United States v. Markling, 7 F.3d 1309, 1318 (7th Cir.1993) (citation omitted). Just how long is a question that "cannot be distilled into a constitutional stop-watch." United States v. Spikes, Nos. 96-3899 & 96-3660, 1998 WL 551966, at * __ (6th Cir. Sept. 2, 1998). In this case Robinson was standing at the door eyeing the officers before he vanished, so plainly he had enough time "to answer or come to the door." See Markling . But, rather than opening the door, Robinson turned away and left, thereby "refusing admittance" and rendering complete the officers' compliance with the knock-and-announce requirement.
 
 III.
 
 9
 To convict Robinson of violating 21 U.S.C. § 841(a)(1), the government was required to prove that he (1) knowingly or intentionally possessed cocaine (2) with intent to distribute and (3) with knowledge that cocaine is a controlled substance. United States v. Magana, 118 F.3d 1173, 1199 (7th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1104, 140 L.Ed.2d 158 (1998). Robinson does not dispute that he knowingly possessed 10.1 grams of a controlled substance, but argues that he had too little to support an inference of intent to distribute. Although we agree that a personal-use amount does not by itself suggest such intent, United States v. Garrett, 903 F.2d 1105, 1113 (7th Cir.1990), we are unpersuaded by Robinson's contention that 10.1 grams of crack is necessarily a personal-use quantity, see United States v. Brown, 7 F.3d 648, 656 (7th Cir.1993) (2.3 grams of crack "not so small as to be inconsistent" with intent to distribute); United States v. Lamarr, 75 F.3d 964, 973 (4th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 358, 136 L.Ed.2d 250 (1996); United States v. Haney, 23 F.3d 1413, 1417-18 (8th Cir.1994). In any event, even small drug quantities can raise the inference of intent to distribute if possession is accompanied by other indicia of distribution, Garrett, and we agree with the government that in this case the jury had more than quantity from which to infer intent.
 
 
 10
 Proof of an element is sufficient if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found its existence beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, we may not reverse a jury verdict unless the record is devoid of any evidence from which a jury could have found guilt beyond a reasonable doubt. United States v. Rodriguez, 53 F.3d 1439, 1444 (7th Cir.1995). Robinson's simultaneous possession of $980 despite months of unemployment certainly heightens the inference that he earned the money by distributing his crack. His reaction to the arrival of the Peoria police also braces the inference that he was distributing the drug. The officers' testimony and their photographs attest to the numerous small rocks of crack left scattered on the kitchen table and floor after the melee, and the jury rationally could have concluded that Robinson was carving the larger pieces into street-size rocks for sale when the police interrupted him. The .2-gram rocks in their separate baggies support this conclusion. Moreover, Officer Kirwan testified without contradiction that the amount of crack was consistent with an intent to distribute, and we have approved the use of such expert testimony. United States v. Curry, 79 F.3d 1489, 1498 (7th Cir.1996); United States v. Billops, 43 F.3d 281, 285-86 & n. 4 (7th Cir.1994); United States v. Lipscomb, 14 F.3d 1236, 1239-43 (7th Cir.1994). Kirwan, who in his career had participated in the execution of several hundred crack search warrants and interviewed 200 to 300 people involved in crack distribution, explained that, on the street, crack typically is sold in $20 rocks weighing one-tenth of a gram. An "eight ball," just over 3.5 grams, can be purchased for $325 to $350, but Kirwan opined that Peoria users will not possess more than two or three .1-gram rocks for purely personal consumption. Robinson in any event did not have a crack pipe, but if he intended to share his drugs, even for free, with the other occupants who did have a pipe, that too would be an intent to distribute. See United States v. Hester, 140 F.3d 753, 760 (8th Cir.1998); United States v. Washington, 41 F.3d 917, 919 (4th Cir.1994); United States v. Coady, 809 F.2d 119, 124 (1st Cir.1987); United States v. Ramirez, 608 F.2d 1261, 1264 (9th Cir.1979); cf. United States v. Tanner, 941 F.2d 574, 586 (7 th Cir.1991) (citing Ramirez ).
 
 
 11
 Finally, we cannot overlook Robinson's defense. Robinson did not assert possession for personal use. Instead, he flatly contradicted the officers who saw him drop the plastic bag with the largest pieces of crack and explained that he was only in the house-with $980 in his pocket-to do laundry before church. Robinson explicitly denied at trial that he planned to consume the crack alone, but to find otherwise the jury would have been compelled to believe that, en route to church, Robinson took to a friend's house his money, a cache of crack worth up to $2,000, and his dirty clothes, and then sat chipping "rocks" while waiting on the laundry. The jury obviously disbelieved both Robinson and Adams, his thoroughly-impeached witness, and we need not blind ourselves to Robinson's preposterous story in assessing whether the evidence of his intent to distribute is sufficient. See, e.g., United States v.. Williams, 136 F.3d 1166, 1168 (7th Cir.1998) ("[n]ot the least of the evidence" the jury could have relied upon in finding the defendant guilty was his own testimony); United States v. Agostino, 132 F.3d 1183, 1193 (7th Cir.1997) (jury "has the choice to disbelieve the defendant's testimony about his intent"), cert. denied, --- U.S. ----, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998); United States v. Zafiro, 945 F.2d 881, 888 (7th Cir.1991) (if defendant testifies "and denies the charges and the jury thinks he's a liar, this becomes evidence of guilt to add to the other evidence"), aff'd on other grounds, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).
 
 
 12
 AFFIRMED.