# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 16-2657

———————————————

United States of America

*Plaintiff - Appellee*

v.

Yusuf John Jones

*Defendant - Appellant*

———————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

———————

Submitted: January 13, 2017
Filed: June 2, 2017
[Unpublished]

———————

Before LOKEN, BEAM, and BENTON, Circuit Judges.

———————

PER CURIAM.

A jury found Yusuf Jones guilty of being a prohibited person in possession of a firearm after a two-day trial. See 18 U.S.C. § 922(g)(1); 924(a)(2). The district

court[1] sentenced him to 48 months in prison. Jones appeals, arguing the district court erred in denying his post-conviction motion for judgment of acquittal, or in the alternative for a new trial, because the evidence was insufficient to convict and the jury's verdict was against the weight of the evidence. See Fed. R. Crim. P. 29, 33(a). Reviewing these issues under well-established deferential standards, we affirm.

**1. Sufficiency of the Evidence.** We review this issue *de novo*, "viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Harris-Thompson, 751 F.3d 590, 598 (8th Cir.) (quotation omitted), cert. denied, 135 S. Ct. 415 (2014).

At 2:10 a.m. on the morning of July 12, 2015, just after downtown bars had closed, patrolling Des Moines police officers Shawn Herman, Emily Shoff-Salsbery, and Brian Joseph heard a loud noise when a Pontiac backed over a curb as it left the parking lot of the Kamodo Club. Herman drove their patrol car behind the Pontiac, and Shoff-Salsbery, in the front passenger seat, ran the license plate and learned that the registered owner had a suspended driver's license and an outstanding warrant. Herman activated the squad car's emergency lights. The Pontiac turned a corner, drove back into the Kamodo Club parking lot, and pulled into a parking spot adjacent to a white car. A passenger door opened while the car was still moving, and a male later identified as Jones hurried out as the Pontiac stopped and fled around the front of the adjacent car. The officers gave chase. Joseph apprehended Jones after he ran a total of 20 to 25 feet. Jones immediately stated, "I don't have anything on me. I don't have anything on me."

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

Officer Herman testified that, as Jones exited the vehicle, "I believe I saw him pull what I thought was a firearm out of his waistband." Officer Shoff-Salsbery testified that she initially saw Jones jump out of the Pontiac and run but was only able to see his back. However, after Jones turned around the front of the adjacent car, she saw him reach into his waistband, saw a dark object, and heard something drop. Officer Joseph testified that he was in the back seat of the squad car but could see out the front by "leaning forward in between the two front seats." As the Pontiac pulled into the parking spot, he saw Jones jump out of the back passenger seat and run away. Joseph testified that Jones "immediately grabbed at his waistline and was hunched over and then, as he started to run, pulled what appeared to be a firearm out . . . . [A]s he ran [he] made a jerking motion with his body" and continued to run past two cars.

Convinced that Jones had discarded what was probably a firearm, the officers secured him in the squad car and searched the area, including the tarmac under the Pontiac and the adjacent car. The two persons in the adjacent parked car remained in their vehicle, blocked by the squad car. After twenty minutes, they asked permission to leave, which the officers granted. Herman then went to where the front of that car had been and began probing a small area of grass with high weeds, along the path where Jones had fled. His foot found the firearm buried in tall grass, 23 minutes after Jones was arrested. Herman testified that "[Jones] was fairly quiet in our squad car until I started getting very close to the firearm, at which time he was trying to get my attention and yelling for me." Shoff-Salsbery, who remained with Jones in the squad car, testified that he "became significantly more agitated" when the firearm was found.

On appeal, Jones argues that no reasonable jury could have found beyond a reasonable doubt that he possessed the firearm because there were contradictions in the testimony of the three officers, Herman's police report omitted several details in their testimony, DNA testing of the firearm was inconclusive, and no fingerprints were taken. He also notes that the two individuals in the adjacent car were allowed

to leave without being questioned. We conclude these contentions are not a basis to set aside the jury verdict. The alleged contradictions in the officers' testimony were relatively inconsequential, and witness credibility is "entrusted to the jury." United States v. Haney, 23 F.3d 1413, 1416 (8th Cir.), cert. denied, 513 U.S. 898 (1994). "We do not weigh the evidence or assess the credibility of the witnesses. The jury has the responsibility of resolving conflicts or contradictions in testimony, and we resolve any credibility issues in favor of the verdict." United States v. Thibeaux, 784 F.3d 1221, 1225 (8th Cir. 2015) (quotation omitted).

As the district court noted in denying Jones's post-verdict motions, "[e]ach officer testified to observing indications that Defendant had a firearm and discarded it during his flight," and felt "so convinced" of this that they searched the area for a firearm after they apprehended Jones. We agree with the district court that, based on the trial evidence, a reasonable jury could find that Jones had actual possession of the firearm and discarded it during his flight.

**2.** Jones further argues, for the same reasons, that the verdict was against the weight of the evidence and the district court erred in denying his motion for a new trial. "Motions for new trials based on the weight of the evidence generally are disfavored. . . . A district court may grant a new trial for insufficiency of the evidence only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." Harris-Thompson, 751 F.3d at 600 (quotation omitted). Here, the district court carefully weighed the evidence, found the officers credible regarding the most important aspect of their testimony, and concluded it could not say that Jones's conviction was a miscarriage of justice. The district court did not abuse its discretion in denying his motion for a new trial.

The judgment of the district court is affirmed.

_____