**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paul PINSON, Defendant–Appellant.**

No. 99–1810.

United States Court of Appeals,
Sixth Circuit.

Jan. 12, 2001.

Before MARTIN, Chief Judge, NORRIS, Circuit Judge, and FORESTER, District Judge.*

FORESTER, District Judge.

Defendant-appellant Paul Pinson appeals his conviction and sentence for arson-related mail fraud in violation of 18 U.S.C. § 1341. For the following reasons, we AFFIRM.

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Ken- tucky, sitting by designation.

## I.

On May 27, 1998, a federal grand jury returned an indictment charging Pinson, his wife Carla, and several additional co-defendants with mail fraud in violation of 18 U.S.C. § 1341. The government alleged that the defendants used the United States mails to fraudulently collect insurance proceeds from Michigan Basic Property Insurance Association ("Michigan Basic") for damages resulting from arson fires to the Pinsons' residence at 7720 Asbury Park, Detroit, Michigan.

Pinson and his wife went to trial on November 24, 1998. At trial, Frank Camaj, a contractor specializing in fire repair, testified that Dorothy and Donald Wallace, Pinson's sister and brother-in-law, brought to him fire repair jobs, some of which involved arson. In exchange for bringing a repair job, Camaj paid the Wallaces a percentage of the insurance proceeds as a commission. Camaj first met the Pinsons in 1993 through the Wallaces in connection with the fire repair to the Pinsons' residence. The Wallaces received a commission of fifteen percent of the total loss from Camaj for referring the Pinsons to him. In 1995, Donald Wallace notified Camaj that another fire had occurred at 7720 Asbury Park. Camaj then met with Pinson, who stated that he, not Wallace, should receive the commission: "You not [sic] to pay commission to Dan [sic] Wallace because it is our job. You have to pay us commission." (J.A. at 65.) Camaj contracted with the Pinsons to repair the house but backed out when he realized the insurance proceeds would not cover the necessary repairs. The Pinsons eventually received $37,400 in insurance proceeds from Michigan Basic for the 1995 fire at 7720 Asbury Park.

Kelly Walker, Pinson's brother, testified that he set the 1995 fire at 7720 Asbury Park by igniting newspapers and charcoal lighter fluid in the Pinsons' living room. Walker claimed that Pinson did not know about the fire in advance and that he set the fire because he felt sorry for his brother, who was behind on his bills and had many children. Walker acknowledged receiving $500 from Pinson, at one point testifying that the money was for setting the fire and at another point testifying that the money was compensation for repairs Walker performed on the Pinsons' house.

The Pinsons were not at home at the time of the fire. Pinson initially told the police that he was in jail at the time of the fire; however, Pinson had been released on January 1, 1995, and was living with his mother on January 6, 1995. A neighbor observed Pinson's wife Carla leaving the house with a suitcase and nine or ten garbage bags filled with clothes several days before the fire. Carla told the police she left because she was pregnant and the doctor had told her to stay off of her feet but testified at trial that she left after a dispute with Pinson.

Captain Earl Sanders of the Detroit Fire Arson Squad investigated the fire. Sanders received consent to enter the home over the telephone from someone who identified himself as Pinson. Acting with this verbal consent but without a search warrant or written consent, Sanders entered the home to inspect the property and take samples for testing. From the burn pattern, Sanders determined that the fire was set with an accelerant in the living room. Stu, a dog trained to detect accelerants, alerted to the presence of accelerants. Sanders' investigation indicated that the fire had been set deliberately. An independent investigator hired by Michigan Basic reached the same conclusion.

Pinson did not testify after the district court ruled that the government could offer evidence of Pinson's two prior false documents convictions for impeachment purposes. On December 1, 1998, the jury found Pinson guilty of one count of mail fraud in violation of 18 U.S.C. § 1341.

A presentence report prepared by the probation office recommended that Pinson be sentenced pursuant to the arson guideline, U.S.S.G. § 2K1.4(a)(2)(C), rather than the mail fraud guideline, U.S.S.G. § 2F1.1. The district court rejected Pinson's objection to sentencing under the arson guideline and sentenced Pinson to fifty-one months.

Pinson now appeals on five grounds: (1) that the pre-indictment delay of more than three years prejudiced his defense and violated due process; (2) that there was insufficient evidence to support the jury's verdict; (3) that the district court erred in not suppressing evidence obtained from the Pinsons' residence; (4) that the district court erred in not suppressing Pinson's entire criminal record—a decision which prevented Pinson's testimony; and (5) that the district court erred in sentencing Pinson under the arson, rather than the mail fraud, guideline.

## II.

### A.

■ Pinson first contends that the district court erred in denying his motion to dismiss based upon the over three-year delay between the 1995 fire and the indictment. The government responds that Pinson waived this argument when he failed to raise the claim before trial as required by Fed.R.Crim.P. 12(b)(1).[1] "This court

1. Fed.R.Crim.P. 12(b)(1) provides:

Any defense, objection, or request which is

strictly applies Rule 12(b), and has repeatedly held that failure to raise 12(b) motions in a timely fashion precludes appellate review." *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir.1988). As Pinson moved to dismiss based on pre-indictment delay after the trial began, appellate review of the matter is waived.

### B.

At the close of the government's case, Pinson moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29. The district court took the matter under advisement and subsequently denied the motion.

We review a claim of insufficient evidence by examining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Crossley*, 224 F.3d 847, 855 (6th Cir.2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). "This court will reverse a judgment for insufficiency of the evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial. It is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir.1992) (internal quotation marks and citations omitted).

██ To establish mail fraud in violation of 18 U.S.C. § 1341, the government must prove the following elements: "(1) devising or intending to devise a scheme to defraud (or to perform specified fraudulent

acts); (2) involving a use of the mails; and (3) for the purpose of executing the scheme or attempting to do so." *Crossley*, 224 F.3d at 857 (internal quotation marks omitted). The government presented the following evidence at trial: Pinson was several months behind on his mortgage payments; neither Paul nor Carla Pinson was home at the time of the fire; a neighbor observed Carla leaving the house with a suitcase and nine or ten garbage bags filled with clothes several days before the fire; Pinson initially misled investigators as to his whereabouts on the date of the fire; Pinson directed Camaj to pay him the fifteen percent commission; and Walker admitted setting the fire and testified that Pinson paid him $500 for doing so. The parties stipulated that Pinson used the United States Postal Service to mail documents relating to the claim. While circumstantial in nature, there was sufficient evidence to support Pinson's mail fraud conviction.

### C.

██ Pinson claims that the district court erred in allowing evidence obtained from the Pinsons' home. The government responds that Pinson waived this issue by not moving to suppress prior to trial as required by Fed.R.Crim.P. 12(b)(3). Pinson made his motion to suppress after the trial began, and the district court denied the motion as untimely. For the reasons stated in Part A, Pinson's failure to timely move to suppress waives appellate review.

### D.

██ At trial, Pinson moved the district court to rule in advance whether it would

---

capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution; . . . .

admit any of his four prior convictions for impeachment purposes if he elected to testify. The district court excluded an over ten-year-old conviction for carrying a concealed weapon and a drug conviction which the district court believed would be more prejudicial than probative. The district court ruled that Pinson's two prior convictions for false documents were admissible for impeachment purposes. Pinson argues that the district court's ruling "chilled his ability to testify" and constitutes an abuse of discretion. However, since Pinson did not testify, the district court's ruling is not an appealable issue. *United States v. Godinez,* 114 F.3d 583, 586 (6th Cir.1997).

### E.

 Pinson contends that the district court erred in sentencing him under the arson guideline rather than the mail fraud guideline.

 In considering sentencing challenges, this court reviews the district court's factual findings for clear error and its legal conclusions *de novo. United States v. Carr,* 5 F.3d 986, 993 (6th Cir. 1993). Facts upon which the court relies at sentencing must be proved by a preponderance of the evidence. *United States v. Walton,* 908 F.2d 1289, 1300 (6th Cir.1990).

Application note 14 to U.S.S.G. § 2F1.1, the fraud guideline, provides:

> In certain other cases, the mail or wire fraud statutes, or other relatively broad statutes, are used primarily as jurisdictional bases for the prosecution of other offenses. For example, a state arson offense where a fraudulent insurance claim was mailed might be prosecuted as mail fraud. Where the indictment or information setting forth the count of conviction (or a stipulation as described in S1B1.2(a)) establishes an offense more aptly covered by another guide-

line, apply that guideline rather than § 2F1.1. Otherwise, in such cases, § 2F1.1 is to be applied, but a departure from the guidelines may be considered.

The sentencing guidelines clearly contemplate the possibility of someone convicted of mail fraud being sentenced under the arson guideline. The issue, then, is whether the district court's determination that a preponderance of the evidence supported Pinson's involvement in the arson was clearly erroneous.

For the reasons discussed in Part B's analysis of the sufficiency of the evidence supporting Pinson's conviction, the district court did not clearly err in finding by a preponderance of the evidence that Pinson was involved in the arson.

### III.

Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.