**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0376n.06

**No. 09-5821**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 06, 2011*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| JEROME W. JACKSON, | ) | |
| | ) | |
| Defendant - Appellant | ) | |
| | ) | |

BEFORE: COLE, McKEAGUE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Jerome Jackson appeals his conviction and sentence for distributing at least five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). We affirm.

I.

Jerome Jackson was the target of a drug investigation in Chattanooga, Tennessee. The events giving rise to this case began when Hamilton County Deputy Sheriff Robin Langford arranged for a cooperating source to participate in a controlled drug buy with Jackson in a hotel room. Deputy Langford searched the cooperating source, the hotel room, and its contents, and gave the source $1,000 in prerecorded bills to purchase crack cocaine. Deputy Langford and other officers then monitored the hotel room from an adjacent room using video surveillance equipment. The police also engaged in physical surveillance outside of the hotel.

The source called Jackson using a cellular telephone and arranged to meet with him. Jackson visited the hotel room, spoke with the source for approximately thirty minutes, and then left. He returned approximately forty-five minutes to one hour later and removed a baggie from his pocket and placed it on the bed. The cooperating source inspected the baggie, which contained a white substance, and then paid Jackson. When Jackson began to leave, the police arrested him. They found $700 of the "buy money" in Jackson's pocket and later determined that the white substance in the baggie was 11.05 grams of cocaine base. Jackson was charged with unlawful distribution.

Approximately three months after these events, one of Jackson's acquaintances was murdered, and the cooperating source who purchased the cocaine from Jackson at the hotel was charged with the crime. Consequently, before Jackson's trial in this case began, the United States filed a motion *in limine* to exclude references to "any crimes, arrests, or bad acts" of the cooperating source. The government explained that it did not intend to call the source as a witness at trial, and that the credibility of the source would not be an issue for the jury. Instead, the evidence at trial would consist of a muted police video of the transaction between the source and Jackson, and the testimony of Deputy Langford and a laboratory chemist.

The district court deferred its decision whether to allow Jackson to mention the cooperating source's pending murder charge until after the government's direct examination of Deputy Langford. When that direct examination was finished, the court heard additional argument and granted the government's motion. It concluded that nothing Deputy Langford had said could be interpreted as "vouching for [the source's] credibility" and therefore the proposed cross-examination regarding the

third party's conduct failed to satisfy Federal Rule of Evidence 608(b)'s requirements. The district court also determined that Federal Rule of Evidence 403 independently prohibited the cross-examination because the potential prejudicial effect of "any reference to this subsequent, presumably unrelated arrest and charges against the cooperating source" would "substantially outweigh[] any probative value."

Thereafter, during cross-examination, Deputy Langford was asked a number of questions regarding the source's motivation for cooperating with the police. Deputy Langford responded that the source had initially cooperated in exchange for help with his "legal issues," but that he later received cash for providing information and participating in controlled transactions. Deputy Langford also testified that the cooperating source received $150 for participating in the controlled transaction that led to Jackson's arrest, and that the source had initially identified Jackson as a supplier of crack cocaine and therefore as a possible target for a narcotics investigation.

The jury found Jackson guilty of distributing at least five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

In preparation for Jackson's sentencing, the probation department prepared a presentence report ("PSR"). The PSR calculated Jackson's base offense level as 24. It also advised that Jackson was a career offender under U.S.S.G. § 4B1.1 because he had four prior felony convictions for crimes of violence or controlled substances offenses. As a career offender, Jackson's offense level was increased to 34 and his criminal history category was VI. His resulting advisory Guideline's sentencing range was 262 to 327 months' imprisonment.

Jackson objected to the district court's use of the Guidelines and consideration of his criminal history on Sixth Amendment grounds. He also objected to the PSR's statement that the cocaine base weighed 12.2 grams. The court overruled the objections to its consideration of the Guidelines, but it sustained the objection to the PSR.[1] The court also agreed with the probation department's determination that Jackson was a career offender and that his applicable Guideline's range was 262 to 327 months. The court then heard argument, discussed the 18 U.S.C. § 3553(a) factors, and imposed a sentence of 290 months' imprisonment.

This appeal followed. After the parties filed their initial briefs, Jackson moved for appointment of substitute appellate counsel. He alleged that his counsel was constitutionally-ineffective for failing to raise several issues on appeal and for failing to provide him with a number of pretrial transcripts. The clerk of court denied Jackson's motion for appointment of substitute counsel pursuant to Sixth Circuit Rule 45(a). However, Jackson's brief in support of his motion for substitute counsel was subsequently docketed as a supplemental brief for our consideration in this case.

II.

Jackson and his counsel collectively raise four issues on appeal: (1) whether Jackson's Sixth Amendment right of confrontation was violated when (a) the district court prevented defense counsel from cross-examining Deputy Langford regarding the fact that the cooperating source was later charged with murder, and (b) the cooperating source failed to testify; (2) whether Jackson's sentence

---

[1]This latter determination did not alter the Guideline's calculation.

violated his Sixth Amendment right to a trial by jury and was unreasonable; (3) whether the delay between Jackson's state court arrest and the filing of the federal case against him violated his rights under the Speedy Trial Act; and (4) whether the drug evidence was sufficient to support his conviction.[2]  We address these claims in turn.

A.

Jackson first asserts that his "Sixth Amendment right[] to confront his accusers" was violated because the trial court "prevented [defense] counsel from cross examining the government's witnesses regarding the confidential informant's murder charges."  In support of this argument, he claims that the district court's decision to deny the cross-examination under the Federal Rules of Evidence was incorrect because "the credibility of [Deputy] Langford is called in to question by the fact that he was working with an informant who later committed a murder."  He also claims that his "right to face his accuser" was violated because the cooperating source did not testify at trial.  We find no constitutional violation.

The Sixth Amendment guarantees the right of a criminal defendant in a state or federal prosecution "to be confronted with the witnesses against him."  U.S. Const. amend. VI; *see also Crawford v. Washington*, 541 U.S. 36, 42 (2004). Cross-examination is a "primary interest" secured by the Confrontation Clause and "the principal means by which the believability of a witness and

---

[2]Although Jackson presents all of his pro se arguments in the form of claims for ineffective assistance of counsel, we address the merits of the arguments he would have had counsel make on his behalf, because that was the purpose of permitting him to file a supplemental brief.  Jackson's ineffective assistance of counsel claims are not reviewable in this appeal. *See United States v. Sullivan*, 431 F.3d 976, 986 (6th Cir. 2005).

the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotations omitted). A criminal defendant's confrontation rights are not limitless, however. "Trial judges [may] . . . impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Where "it is merely the extent of cross-examination that is limited," as it was here, the Confrontation Clause question is "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006) (citation and internal quotation marks omitted). Under this standard, it is only when "the defense is not allowed to plac[e] before the jury *facts* from which bias, prejudice or lack of credibility of a prosecution witness might be inferred," *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989) (first alteration in original; citation and internal quotation marks omitted), that "there is indeed a denial or significant diminution of cross-examination that implicates the Confrontation Clause." *Boggs v. Collins*, 226 F.3d 728, 739 (6th Cir. 2000).

Jackson was not denied his right of confrontation. The fact that the confidential informant was charged with murder three months after the events giving rise to this case occurred does not show any "bias, prejudice, or lack of credibility" by Deputy Langford in his decision to use the confidential informant. Moreover, any such violation in this case would be harmless beyond a reasonable doubt. The pending criminal charge against the source was not relevant to Deputy Langford's testimony; Jackson was allowed to cross-examine Deputy Langford regarding the

cooperating source's motivations for participating in the investigation; and the chief evidence against Jackson, a video recording of him selling the crack cocaine to the cooperating source, overwhelmingly established his guilt. *Cf. Delaware v. Van Arsdall*, 475 U.S. at 684.

Jackson's assertion that his constitutional "right to face his accuser" was violated because the cooperating source did not testify at trial is also off the mark. The cooperating source was not a witness against Jackson for purposes of the Sixth Amendment because the source did not testify at trial and did not otherwise "bear testimony" against him. *Crawford*, 541 U.S. at 51. The source merely appeared in a muted video that showed Jackson selling him the crack cocaine. *Cf. United States v. Jones*, 205 F. App'x 327, 342-43 (6th Cir. 2006) (holding that even the *audible* statements of a nontestifying informant in a similar drug-sale video did not violate the Confrontation Clause because the statements were not offered for their truth but to place the defendant's statements in context). Jackson therefore had no constitutional right of confrontation as to the cooperating source.

B.

Next, Jackson asserts that his Sixth Amendment right to be tried by a jury was violated because the district court applied the Sentencing Guidelines and because it considered his criminal history in determining that he was a career offender. The sum total of his argument, however, is that "[c]ounsel for the appellant filed objections to the use of the sentencing guideline's [sic] in general, to the use of criminal history to enhance the appellant's sentencing range, and to the use of the career offender enhancement – all without a jury finding these factors to be true." Because "[i]t is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh

on its bones," we conclude that this claim is waived.[3] *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) (second alteration in original; citation and internal quotation marks omitted); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (explaining that arguments "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" are "waived") (citation and internal quotation marks omitted).

Jackson also intimates that his sentence was procedurally and substantively unreasonable inasmuch as "the trial court considered the guidelines as advisory but failed to consider any of the 18 U.S.C. 3553(a) factors presented by the defendant." *See Gall v. United States*, 552 U.S. 38, 49 (2007). We presume, however, that a district court reviews all of the information presented to it before it imposes a sentence. *United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006). And the mere fact that the "district court may not have mentioned all of the statutory factors" does not show that a sentence is unreasonable because we have "never required the 'ritual incantation' of the factors to affirm a sentence." *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005). Jackson has not identified any factor that the district court overlooked, nor has he provided any reason to doubt the presumption of substantive reasonableness attached to his within-Guidelines sentence. *See United States v. Robinson*, 503 F.3d 522, 528 (6th Cir. 2007). Upon review, we conclude that the sentence is reasonable.

C.

---

[3]It is also clearly meritless. *See Booker v. United States*, 543 U.S. 220, 244 (2005).

Jackson's remaining claims are even less convincing. His argument that the United States violated the Speedy Trial Act by waiting to charge him with a federal crime until several months after he was arrested by state officials fails for at least two reasons. First, the argument is waived, because a defect in instituting prosecution or in the indictment "must be raised before trial," Fed. R. Crim. P. 12(b)(3), (e); *see also United States v. Brown*, 498 F.3d 523, 527-28 (6th Cir. 2007), and Jackson never moved to dismiss the indictment based on unreasonable pre-indictment delay. *Id.*; *see, e.g., United States v. Pinson*, 1 F. App'x 426, 429 (6th Cir. 2001). Second, Jackson's claim fails on the merits because the time he spent in state custody does not count as a "federal arrest" for purposes of triggering the Speedy Trial Act clock.[4] *United States v. Blackmon*, 874 F.2d 378, 381 (6th Cir. 1989).

Jackson's assertion that there was insufficient drug evidence because the crack cocaine introduced at trial was in several pieces rather than a single "rock," and because the district court refused to allow the jury to independently weigh the crack cocaine, is likewise without merit. "The relevant question in assessing a challenge to the sufficiency of the evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

---

[4]Relatedly, to the extent Jackson suggests that his prosecution by both state and federal authorities violated his Fifth Amendment right against double jeopardy, the claim is frivolous. The "dual sovereignty doctrine holds that the double jeopardy clause does not apply to suits by separate sovereigns, even if both are criminal suits for the same offense." *United States v. Louisville Edible Oil Prods., Inc.*, 926 F.2d 584, 587 (6th Cir. 1991) (citation and internal quotation marks omitted).

If a certain drug quantity "increases the penalty for a crime beyond the prescribed statutory maximum," it becomes an essential element and must also "be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

Here, Deputy Langford testified that he sealed the crack cocaine recovered as a result of the controlled buy in an evidence envelope and submitted it for laboratory testing. Brian Angolia, the chemist who analyzed the crack cocaine, testified that he was the only person to unseal the envelope and that the drugs weighed 11.05 grams. Viewing this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the cocaine base entered into evidence at trial in this case was the crack cocaine that was recovered by the police at the time of Jackson's arrest, *see generally United States v. Haney*, 23 F.3d 1413, 1415 (8th Cir. 1994) (noting one expert's testimony that crack cocaine is porous and prone to crumbling when it is moved or handled), and that the cocaine base weighed more than five grams.

III.

For these reasons, we affirm.